THE ATTORNEY-GENERAL *ex rel.* MATTHEW H. CAR-
PENTER,

*vs.*

GEORGE B. ELY.

At an election, if a ballot contains the names of two persons for the same office, it is bad as to both, but it cannot be rejected as to candidates for other offices regularly named upon the ballot.

Where the vote of a town is rejected by the county canvassers, because no poll list with the oath of the inspectors of election, accompanied the statement of votes made up and returned to the clerk of the county board of supervisors, the statement being regular in all other respects, and delivered by and to the proper officers within the time prescribed by law, the testimony of the town clerk is competent to show by the records kept in his office, that the election was regularly notified and conducted, and that the votes were ascertained and canvassed according to law, and also to show the number of votes cast for the different candidates for the (disputed) office in that town.

The chairman of the town board of supervisors of the town whose vote is rejected for the above reason, is a proper witness to show that he acted as one of the inspectors of election, that such inspectors were duly sworn before the polls were opened, and that the election was conducted in conformity to the statute.

The duties of the canvassing boards are in the main ministerial.

In an information in the nature of a *quo warranto*, to test the fact of election between the parties claiming the same, the court is bound to rectify mistakes and omissions of the canvassing boards.

Where there is a doubt as to the individual meant to be voted for, on account of the misspelling of the surname or the addition of different or erroneous Christian names, facts and circumstances of public notoriety *dehors* the ballot, connected with the election and the different candidates, are competent as evidence to ascertain for whom the ballots were intended to be cast.

It is competent for the court and jury to go behind the certificate of the canvassing boards, for the purpose of determining who is legally elected to a disputed office.

THIS was an information in the nature of a *quo warranto*, filed by the attorney-general upon the relation of Matthew H. Carpenter against George B. Ely.

The relation sets forth that the relator, at a general election held in the several towns and wards in the county of Rock, on the Tuesday next succeeding the first Monday of November, 1854, received the greatest number of votes cast in the several towns and wards in said county for the office of district attorney of said county of Rock, and was thereby duly and

legally elected to said office for the term of two years from the first Monday of January, 1856, and that the said George B. Ely, without any legal grant, warrant or right whatsoever, had for the space of three days held, exercised and enjoyed said office, without any legal warrant or right, &c., and hath claimed and still does claim, &c.

The information was filed the 5th day of January, 1855, whereupon the usual process was issued, served and returned.

The pleadings are quite voluminous, but as no legal question of importance is involved in them, they are not inserted. October 23d, 1855, the respondent filed his plea, averring that at the said general election he received the greatest number of votes cast for the office aforesaid, and was duly elected, and that upon a canvass of the votes cast in the several towns and wards of said county, for the office aforesaid, by the proper and legal board of canvassers, it was ascertained and determined that he, the respondent, had received the greatest number of votes cast for said office and was duly elected thereto, and received from the proper officers a certificate of his election, and thereupon took the oath of office, and filed his bond duly approved as required by the statute, but that up to the time of the filing of the information he had done no official act, nor in any manner exercised the duties and privileges of said office, except by the filing his bond and taking his official oath, and claiming to be rightfully and lawfully elected to said office, &c.

A general replication to this plea was filed October 23d, and the issue so formed was sent to the Circuit Court of Rock county to be tried, and upon the trial the jury returned a special verdict which was returned into this court at the December term, 1855, upon which the relator then and there moved for judgment.

The verdict of the jury is as follows:

" We the jurors find that the general election held in the several wards and towns in said county of Rock, on the Tuesday next succeeding the first Monday of November, A. D. 1854 (aside from the town of Turtle in said county), was, in all things, regularly and properly notified, held and conducted in due form of law. That at said election there were given in, ballots for dis-

trict attorney of said county for the term mentioned in the pleadings in this cause, as follows:

"For George B. Ely, 1,098; for George B. Ela, 8; for Ely, 3; for Ely Ely, 1.

"For Matthew H. Carpenter, 1,081; for D. M. Carpenter, 4; for M. D. Carpenter, 2; for M. T. Carpenter, 1; for Carpenter, 1.

"For S. J. Todd, 676.

"That in the town of Turtle in said county the election was regularly notified and held according to law, and that there were there given votes for district attorney, as follows:

"For S. J. Todd, 106; for Matthew H. Carpenter, 28; and for George B. Ely, 3.

"And the jury find that the certificate of election was, on the 16th of November, 1854, issued and delivered to George B. Ely, the defendant, and that the said George B. Ely, on the 28th of December, A. D. 1854, executed in due form of law, his official bond as such district attorney, and subscribed the constitutional oath of office, and deposited the same in the proper office on the 29th of said December; that he did no act in said office prior to the 8th day of January, A. D. 1855, that being the first time he was called upon to perform any act in said office.

"That the two votes given for 'M. D. Carpenter,' the four votes given for 'D. M. Carpenter,' and the one vote for 'Carpenter,' and the one vote for 'M. T. Carpenter,' as aforesaid, were, when given and cast, intended by the electors who gave and cast the same, to be given and cast for Matthew H. Carpenter, the relator.

"We find the names of 'M. D. Carpenter,' 'M. T. Carpenter,' 'D. M. Carpenter,' and 'Carpenter,' as written on the ballots, were not intended by the voters who cast them, for *abbreviations* of the name of Matthew H. Carpenter.

"The jury also find, that the name George B. Ela, is *idem sonans* with the name of the defendant, and that the eight votes written for George B. Ela were given and cast for the defendant, and were so intended to be given and cast by the voters respectively who gave and cast the same. And the jury therefore find, that at the said election in the towns and wards of the said county of Rock, the said Matthew H. Carpenter was, by the electors of said county, duly and legally elected district attorney of said

Carpenter vs. Ely.

county, for the term of two years from the first day of January, A. D. 1855, and that the said George B. Ely was not then and there elected to said office for said term.

"And the jury find, that if, in the opinion of the court, the executing said bond by said Ely, and subscribing said oath of office by him, and depositing and filing the same as aforesaid, and his non-refusal until the 8th of January, 1855, to perform the duties of said office, constitute in law an entry into said office on the first Monday of January, 1855, without the doing or refusing to do any official duty of said office, then we find that said Ely entered upon said office previous to the exhibiting the information in this cause; and otherwise, we find that he did not enter into said office prior to the exhibiting the information in this cause."

On the trial of the issue in the Circuit Court the respondent's certificate of election was read in evidence, together with several stipulations of the respective parties in relation to the facts in the case. It was stipulated and agreed that the respondent, on the 29th day of December, 1854, filed his official bond duly approved, and his oath of office duly made and subscribed ; that he in no way entered upon the duties of the office until the 8th day of January, 1855, except by filing his bond and taking his official oath, but that between the 1st and the 8th of January, 1855, he did not refuse to act as district attorney, except in one case, which had been commenced in December, 1854, and that he refused to act in that case solely because he had, prior to the 1st of January, 1855, been retained on the part of the defendants; and that had he been called upon to act as district attorney between the 1st and 8th of January, 1855, he should have done so, and that on the 8th of January, he performed his first official duty.

The state then offered and read in evidence a stipulation stating the election, returns, canvass and statement of the votes cast for the several persons for the office of district attorney, made by the county board of canvassers (not including the town of Turtle), the same as set forth in the special verdict above stated.

The state then offered in evidence the following stipulation, which was objected to by the defendant, objection overruled, and exception taken :

- " In this cause, the respective parties, the state by George B.

Smith, Attorney-General, and the respondent, *per se*, stipulate (subject to the defendant's objection to its competency), that before the election of November, 1854, referred to in the pleadings in this cause, it was announced to the electors of Rock county, in all of the newspapers printed in said county, that George B. Ely and Matthew H. Carpenter (the defendant and relator in this suit) would be, and were candidates for election to the office of district attorney of Rock county for the term of two years from the 1st Monday of January, 1855."

Also the following stipulation, which was in like manner objected to, objection overruled and exception taken.

The substance of this stipulation (subject to the defendant's objection to its competency) was, that at the time of the said election, there was no lawyer in Rock county, eligible to the office of district attorney of the name of George B. Ela, nor Ely Ely, nor Ely; nor of the name of D. M. Carpenter, nor of M. D. Carpenter, nor M. T. Carpenter; that there was no lawyer in said county, whose surname was Carpenter, excepting Matthew H. Carpenter, the relator; and that there were no votes at said election for any persons of the name of Ely or Carpenter, except for the office of district attorney; that both the relator and defendant were practicing lawyers in the county, and eligible to said office.

Also another stipulation in like manner admitted under the objection and exception of the respondent: " That the clerk of the board of supervisors received from Benjamin F. Murray, who was chairman of the town board of supervisors of the town of Turtle, a returned written statement to him directed officially, of votes cast in said town of Turtle at said election, of which the following is a copy:" The return is in the usual form, and gives a statement of the votes cast for the persons voted for, for each and all the offices to be filled at said election, and states that for the office of district attorney, S. J. Todd received 106 votes, Matthew H. Carpenter received 28 votes, and George B. Ely received 3 votes; but no poll list, nor oath of the inspectors of election accompanied said statement, and that this was the only return ever made by the inspectors of election of said town to the clerk of the board of supervisors.

The state then called the town clerk of the town of Turtle,

who produced and swore to the records of said town of the proceedings of said election, of record and on file in his office, to show that said election was regularly notified and conducted, and what votes and for whom, were cast in said town for said office, to which the respondent objected; objection overruled, and exception taken. It was proved by these records and papers, that the election was regularly and legally held and conducted, and resulted, in relation to the office of district attorney as set forth in the return to the clerk of the board of supervisors above set forth. It also appeared that the inspectors and clerks of the election for said town were in fact duly sworn before the polls opened, and their oaths were on file in the town clerk's office, but were omitted in the return before mentioned.

It further appeared that in the town of Magnolia in said county, there was one ballot, regular in all respects except that it contained the names of two persons for the office of senator, whereas there was but one senator to be elected. This ballot contained the name of George B. Ely for district attorney, and was rejected and thrown out entirely, by the canvassing board.

The questions raised upon the argument, upon the instructions to the jury, given and refused by the court below, and upon the several exceptions taken to the admission of evidence, are set forth in the opinion of the court.

*George B. Smith*, Atty. Genl., for the relator.

*George B. Ely, p. p.*, for the respondent.

*By the Court*, Cole, J. This was an information in the nature of a *quo warranto* filed against the respondent for an alleged intrusion into the office of district attorney for Rock county. The respondent in his plea, in substance sets up an election to the office, at the general election in November, 1854; that he had received a certificate of election from the clerk of the county board of supervisors of said county, had filed his bond, and taken the oath of office, and therefore might lawfully enjoy and exercise the same. Issue was taken upon the allegation of the plea that the respondent was duly and legally chosen and elected to the office of district attorney, and that he received a greater number

of votes for that office, at said election, than any other candidate. This issue was sent to the Circuit Court of Rock county for trial. The jury found a special verdict, upon which the relator now moves for judgment.

The questions raised upon the argument can be conveniently considered in the order they are presented to us in the finding of the jury.

The ballot cast in Magnolia, which was rejected by the town canvassers because it contained the names of two persons for the office of senator, should have been counted for the respondent. That ballot was undoubtedly bad, so far as the office of senator was concerned. There was to be but one senator elected at that election in the Magnolia senatorial district, while the ballot contained the names of two persons designated for the office, and, as a matter of course, it was impossible to tell who was intended to be voted for. *Sec.* 28, *chap.* 6, *R. S.*

But the fact that the ballot was not good as to the office of senator, did not necessarily vitiate the whole ballot; it was, with the exception of this circumstance, entirely regular as to the office of district attorney, and other officers upon the ticket, and we can see no valid objection to counting it as to them.

It frequently happens, that an elector, through inadvertence or mistake, casts a ballot which contains the names of more than one person for the same office, while there are a dozen other names upon it, for as many different offices, all regular and proper; and it seems rather a rigorous rule to declare that he shall lose his vote as to all, because the ballot is bad in one particular.

If he loses his vote as to the office for which his ballot is double, it would seem to be all that public policy, the security of the ballot box, or a sound construction of the statute, require.

The vote in the town of Turtle was rejected by the county canvassers, because no poll list with the oath of inspectors of election of said town accompanied the statement of votes, made and sent by such inspectors to the clerk of the county board of supervisors, in conformity to the provisions of section 29, chap. 6. Otherwise the statement was regular and unexceptionable, and delivered by the chairman of the town board of supervisors to the clerk within seven days after the election.

Upon the trial of the cause, the town clerk of Turtle was pro-

Carpenter vs. Ely.

duced and sworn to records of said town on file in his office, to show that the election was regularly notified and conducted, and that the votes were ascertained and canvassed according to law; and also to show the number of votes cast for the different candidates for the office of district attorney in that town.

The chairman of the town board of supervisors of the town of Turtle was also sworn, and testified that he acted as one of the inspectors of election at that election, that such inspectors were duly sworn before the polls were opened, and that the election was conducted in strict conformity to the statute.

All the testimony was admitted, subject to objection as to its competency, but we are of opinion that it was legal and competent evidence. The jury in their special verdict also find that the election in that town was regularly notified and held according to law.

Under these circumstances the twenty-eight votes given for the relator in that town, for the office of district attorney, and the three given for the respondent, beyond all doubt, should be counted for them respectively. It is true, section 25 of chap. 6, requires that the oath taken by the inspectors shall be annexed to and returned with the poll book to the clerk of the board of supervisors; while section 49 makes it the duty of the inspectors to inclose one of the poll lists with the statement of votes made by them.

Whether these provisions of the statute must be strictly complied with before the county canvassers are authorized to receive and act upon the statements thus made to them, it is not necessary in the attitude of this case to inquire; but we do feel it our duty to say, that they are certainly safe and salutary provisions of law, and ought not to be disregarded by inspectors of elections.

The duties of these canvassing boards are in the main ministerial. *State ex rel. Bashford vs. Barstow; The People vs. Van Slyck,* 4 *Cow.* 322; *Ex parte Heath et al.,* 3 *Hill,* 43; *The People vs. Stevens,* 5 *ib.* 617, *C. J. Nelson's opinion.* But *perhaps* the board of county canvassers might, under the provisions of section 95, have canvassed the Turtle vote, notwithstanding this informality in the return. Conceding, however, that the county board decided correctly upon the facts before them, in this proceeding,

we are bound to go back and rectify this mistake or omission and count the vote, for it is the election by a plurality of votes which constitutes the right to an office, and that right cannot be defeated by the mistake, or negligence, or misconduct of the canvassing boards. *State vs. Barstow, unreported; The People vs. Vail,* 20 *Wend.* 12; *Ex parte Heath, supra.*

It further appears from a stipulation filed in the cause, and the jury so find in their verdict, that there was given at said election for the office of district attorney for said county, not including the vote in dispute in Magnolia, or the votes given in the town of Turtle,

|  |  |  |
|---|---|---|
| For George B. Ely, the respondent, | 1,098 | votes. |
| " George B. Ela, | 8 | " |
| " Ely Ely, | 1 | " |
| " Ely, | 3 | " |
|  |  |  |
| " Mathew H. Carpenter, the relator, | 1,081 | " |
| " D. M. Carpenter, | 4 | " |
| " M. D. Carpenter, | 2 | " |
| " M. T. Carpenter, | 1 | " |
| " Carpenter, | 1 | " |
|  |  |  |
| " S. J. Todd, | 676 | " |

The relator claims that all the votes which were cast for Carpenter with the different initials, were intended by the persons who cast them, to be cast for him, the relator; and the respondent claims that the 8 votes cast for George B. Ela, being *idem sonans* with his name, should be counted for him, the respondent.

The following facts which were stipulated or agreed upon by the parties, were admitted in evidence, subject to the respondent's objection as to their competency.

That before the election in November, 1854, it was announced to the electors of Rock county, in all the newspapers printed in the county, that George B. Ely and Matthew H. Carpenter would be, and were candidates for the office of district attorney of the county; that at this time there was no lawyer in the county, eligible to the office of district attorney, of the name of George B. Ela, Ely Ely, or Ely, and that there was no lawyer

whose surname was Ely, except the respondent; that there was no lawyer in the county by the name of D. M. Carpenter, M. D. Carpenter, M. T. Carpenter, or whose surname was Carpenter, except the relator; that there were no votes cast in the county at said election for any person of the names of Ely and Carpenter, except for the office of district attorney; and that both the relator and respondent were practicing attorneys at that time, in the county, and eligible to the office.

We are of the opinion that these facts were competent testimony to go to the jury. The principal question or matter in dispute, was to ascertain and determine for whom these votes with the different initials were intended? Were those given for Carpenter with the different abbreviations and initials, intended to be cast and given for the relator, Matthew H. Carpenter? And were those given for Ely with the various initials and abbreviations, intended to be given for the respondent, George B. Ely? And how was this intention of the voter to be ascertained? By reading the name on the ballot and ascertaining who is designated or meant by that name? Is no evidence admissible to show who was intended to be voted for under these various appellations except such evidence as is contained in the ballot itself? Or may you not gather this intention of the voter from the ballot, explained by the surrounding circumstances, from facts of a general public nature, connected with the election, and the different candidates, which may aid you in coming to the right conclusion? These facts and circumstances might perhaps be adduced so clear and strong, as to lead irresistibly to the inference that a vote given for Carpenter was intended to be cast for Matthew H. Carpenter. A contract may be read by the light of surrounding circumstances, not to contradict it, but in order more perfectly to understand the intent and meaning of the parties who made it. By analogous principles we think that these facts, and others of like nature connected with the election, could be given in evidence for the purpose of aiding the jury in determining who was intended to be voted for. In New York, courts have gone even further than this, and held that not only facts of public notoriety might be given in evidence to show the intention of the elector, but that the elector who cast the abbreviated ballot, may be sworn as to who was

intended by it.   *The People vs. Ferguson*, 8 *Cow.* 102.   But this is pushing the doctrine to a great extent, further, we think, than considerations of public policy and the well being of society will warrant; and to restrict the rule and say that a jury must determine from an inspection of the ballot itself, from the letters upon it, aside from all extraneous facts, who was intended to be designated by the ballot, is establishing a principle unnecessarily cautious and limited.

In the present case, the jury from the evidence before them, found that the two votes given for M. D. Carpenter, the four votes given for D. M. Carpenter, the one for M. T. Carpenter, and the one for Carpenter, were, when given and cast, intended by the electors who gave and cast the same respectively, to be given and cast for Matthew H. Carpenter, the relator. Such being the case it clearly follows that they should be counted for him.

It is not for us to enter upon an examination of this testimony, weigh it, and determine whether it would lead our judgment to the same conclusion; we can only say that the testimony was competent, and the jury have declared that it was sufficient to prove the facts found by them.   The jury likewise found that the name of George B. Ela was *idem sonans* with the name of the respondent, and that the eight votes written George B. Ela were given and cast for the respondent, and were so intended by the electors who cast them; and further, that the relator was duly and legally elected district attorney of Rock county for the term of two years from the first Monday of January, 1855.

Upon this verdict judgment of ouster must be given against the respondent and establishing the right of the relator.

An instruction was asked for by the relator and given by the court, to which the respondent excepted; and three instructions asked for by the respondent, which the court refused to give; and to this ruling the respondent also excepted.

It is believed that there are no questions arising upon the instructions which have not been anticipated and sufficiently passed upon in the observations already made.

The verdict shows that the relator received a plurality of the legal votes cast for the office, and effect must be given to this

election, notwithstanding the certificate of election has been given to the respondent.

A canvassing board cannot create a right to an office. That must be based upon an election. The respondent offered his certificate in evidence, but has not seriously contended that it was conclusive and final. It was perfectly competent for the court and jury to go behind the certificate and determine who had been legally elected to the office. *See cases already cited from 4 and 8 Cow. ; 20 Wend.*

Judgment for the relator.