June Term, 1860.

STATE ex rel. SPAULDING v. ELWOOD.

---

## STATE ex rel. SPAULDING vs. ELWOOD.

An act of the legislature authorized the voters of a county to decide by ballot whether a part of its territory should be annexed to an adjoining county. On the hearing of an alternative mandamus, sued out to compel the register

of such adjoining county to record a deed for land situate in the territory whose annexation was the subject of such vote, it was *held*, that the register, in deciding whether his duty required him to record the deed, might rely upon the official canvass of the votes given at such election; but that such official canvass was not *conclusive*, and the relator might impeach its correctness.

The act referred to, provided that at said election the electors might express their choice by voting· *"For detaching R——,"* or *"Against detaching R——,"* on separate ballots, to be deposited in a box used for such ballots only: *Held*, that a return to such writ of mandamus, stating that at said election a majority of the legal votes cast upon said question, was "Against detaching R——," and specifying the whole number of votes cast, and the number which were cast "For detaching R——," and the number which were cast "Against detaching R——," was sufficiently certain and specific to inform the relator of the respondent's ground of defense.

*Held*, also, that separate poll lists should have been kept, of all persons voting upon that question at said election, but *held, further*, that the votes of certain towns, in which no such separate poll list was kept, should not, for that rea - son, be rejected, but that the real will of the electors, as expressed by their ballots, should be carried into effect, notwithstanding such informality or neglect of duty on the part of the officers conducting said election.

*Held, further*, that the expressions in said act as to the form of the ballots, were not imperative, and that certain ballots which were cast at said election for "R—— attached," for "R—— detached," "For division," and "Against division," and which were counted by the canvassers, as they supposed them to have been intended, should not be rejected because not in the form prescribed by the act, but that when the intention of a voter can be clearly ascertained from the ballot itself, with the aid of extraneous facts of a public character connected with the election, such intention should have effect, and the vote be counted accordingly.

## APPLICATION for a Mandamus.

An alternative writ of mandamus was issued in this case, requiring the defendant, who was the register of deeds of Green Lake county, to record a certain deed for land alleged to be situate in that county, which had been offered to him for registration, or show cause, &c. The question in controversy was, whether the territory of the town and city of Ripon, in which said land was situate, had been detached from the county of Fond du Lac, and annexed to the county of Green Lake, under an act of the legislature which declared said territory to be so detached and annexed, but which submitted the act to a vote of the people of Fond du Lac county, at an election at which the qualified electors were authorized to vote " for detaching Ripon," or " against detaching Ripon," on separate ballots, and which provided that if a majority of all the votes cast at such election should

be "for detaching Ripon," then the act should be in force, &c., from and after December 1st, 1859. This act required that the votes cast at such election should be canvassed in the same manner as the votes for state senator are canvassed in Fond du Lac county. The writ alleged that said election was duly held, and that by the return made to the clerk of the board of supervisors in Fond du Lac county, by the canvassers of the votes in the different wards and towns, it appeared that the whole number of votes given upon the question, was 4,910, of which 2,525 were "for detaching Ripon," and 2,385 "against detaching Ripon," showing a majority of 140 votes in favor of detaching Ripon from Fond du Lac county and annexing it to Green Lake county, in pursuance of said act; and that it appeared from the same return, that there were cast 107 votes "for Ripon attached," 49 "for Ripon detached," 28 "for division," and 211 "against division;" and that there was included in the votes "for detaching Ripon," and "against detaching Ripon," the votes in the towns of Forest and Friendship, the north ward of Waupun and the fourth ward of Fond du Lac, which purport to have given a majority in the aggregate, of 347 votes "against detaching Ripon," but in which no poll list of the vote was returned, as required by said act; and that by reason of the premises the city and town of Ripon became, from and after the 1st of December, 1859, a part of Green Lake county.

A motion to quash the writ was sustained, on the ground that it did not show, with sufficient clearness and certainty, that a majority of the votes at said election were cast in favor of detaching said territory from the county of Fond du Lac. The opinion of the court upon this motion appears in the report of the case in 11 Wis., 17. The writ was afterwards amended by adding an allegation, "that under and by virtue of the act aforesaid, an election was held in the county of Fond du Lac, at the time in said act provided, at which election a majority of all the legal votes cast by the qualified electors of said county of Fond du Lac, upon the said question, in pursuance of the act aforesaid, was 'for detaching Ripon' from the county of Fond du Lac."

To the writ, as amended, the defendant put in a return,

June Term, 1860.

STATE ex rel.
SPAULDING
v.
ELWOOD.

stating that the board of canvassers of the county of Fond du Lac, at said election, duly canvassed the votes of the several towns and wards of said county, in the same manner as the votes given for state senator are canvassed in said county, from which canvass, duly recorded, &c., it appeared that at the election mentioned in said writ, the whole number of votes cast in said county, on that subject, was 5,315, of which there were given 'for detaching Ripon,' 2,604 votes, and 'against detaching Ripon,' 2,711 votes; that 107 votes, alleged in said writ to have been cast at said election, 'for Ripon attached,' were, in fact and in truth, cast against detaching Ripon; and further, that at the election held pursuant to said act, a majority of the legal votes cast on that subject were cast against detaching Ripon, the whole number of votes cast upon that question being 5,315, of which 2,711 were 'against detaching Ripon,' and 2,604 'for detaching Ripon.'

To this return the relator demurred, for reasons which are stated sufficiently in the opinion of the court.

October 15.   *By the Court,* COLE, J.   To the answer or return made to the alternative writ in this case, the relator has taken several objections by his demurrer. But without attempting to notice all these objections in detail, we will state that we consider them untenable. In the first place, it is insisted that the return is insufficient in substance, and shows no legal excuse or justification, for the respondent's refusal to record the deed mentioned in the writ. The return sets up and relies upon the official canvass, made by the proper canvassing board, from which it appears that a majority of the votes cast upon the subject of detaching the territory of the town and city of Ripon from the county of Fond du Lac, and annexing the same to the county of Green Lake, was against such a division of the former county. The register of deeds, in discharging his duty of recording all conveyances of lands situate in Green Lake county, had an undoubted right to rely upon the correctness of the official canvass, or rather to assume that it was *prima facie* accurate, when determining the question whether it was proper for him to record the deed or

June Term,
1860.

STATE ex rel.
SPAULDING
v.
ELWOOD.

not. For if the canvass was correct, and showed the true state of the vote upon the question of division, then it was clear that the deed ought not to be recorded in Green Lake county, for the reason that it embraced land still within the limits of Fond du Lac county. It was, undoubtedly, competent for the relator to impeach the correctness of the official canvass, and his counsel attempted to do so, on the argument of the demurrer, in one or two particulars which will be subsequently noticed. But the respondent does not rest his case upon the official canvass, but states in the return, other facts which afford an ample excuse or justification for his refusal to record the relator's deed. He alleges in substance, that at the election in the alternative writ mentioned, a majority of the legal votes cast in the county of Fond du Lac, upon the subject of the division of that county, was against detaching Ripon; stating that the whole number of votes cast upon that question, was five thousand three hundred and fifteen, of which two thousand six hundred and four votes were cast "for detaching Ripon," and two thousand seven hundred and eleven votes were cast "against detaching Ripon." This general manner of pleading the facts in regard to the result of the election, is probably as specific and certain as the case admits of, or at all events it is sufficient to apprize the relator of the grounds of the respondent's defense, and that he does not rely upon the official canvass alone, but upon the real will of the electors as expressed through the ballot box upon the question submitted to them. Now if this allegation of the return is true—and the demurrer, of course, admits the truth of all matters well pleaded—then it is at once apparent that the respondent very properly refused to record the deed. In that case the proper place for recording the deed would be Fond du Lac county. So that the material fact in the writ, and the one upon which the entire right of the relator to have his deed recorded in Green Lake county depends, namely, that at the election held pursuant to the act of the legislature, a majority of the legal votes cast by the electors of Fond du Lac county was in favor of detaching the territory of the town and city of Ripon from that county, and annexing the same to the coun-

June Term,
1860.

State ex rel.
Spaulding
v.
Elwood.

ty of Green Lake, is fully traversed and put in issue by the return. And upon this ground, therefore, it is very clear that the return is not defective in substance. But it is alleged in the relation and writ, that there was included and counted by the county board of canvassers, in the vote " for detaching Ripon," and " against detaching Ripon," what was returned, purporting to be votes cast at such election, in the towns of Forrest and Friendship, and the north ward of the village of Waupun, and the fourth ward of the city of Fond du Lac, which said towns and wards purport to have given a majority in the aggregate, " against detaching Ripon," of three hundred and forty-five votes, when the canvassers in those towns and wards made no return of a separate poll list of the votes cast upon the subject, provided for in the act of the legislature, nor any designation whatever of the persons who voted upon said question, and it is averred that no such poll list was kept, nor any other means used upon said election to determine who voted, or how many votes were cast upon that question, prior to the opening of the ballot box containing said votes, and therefore it is insisted that the votes of those towns and wards should have been rejected and thrown out by the county board of canvassers for this informality in the return, or irregularity in conducting the election. As the act of the legislature provided that any qualified elector of Fond du Lac might vote at the election therein named, "for detaching Ripon," or "against detaching Ripon," on a separate ballot, written or printed, to be deposited in a box used only for such ballots, it is quite clear to our minds that separate poll lists should have been kept of all persons voting upon that question. But assuming that no such separate poll lists were kept in the above named town and wards, what is the consequence? Is the vote of those towns and wards to be rejected for that reason? Cannot this mistake be rectified in this proceeding, and is it not the duty of the court to do so, and give effect to the will of the electors? By the constitution, no county with an area of nine hundred square miles or less, can be divided or have any part stricken therefrom, without submitting the question to a vote of the people of such coun-

ty ; nor unless a majority of all the legal voters of the coun-
ty voting upon the question shall vote for the same (art. 13,
sec. 7). When a contest arises as to whether a majority of
the legal votes are in favor of a division or not, and when
the officers appointed by law to canvass the votes given upon
that subject, have failed to perform their duty, how can
effect be given to this constitutional provision except by the
court's rectifying such mistakes as are set up in this relation
and writ ?

The act of 1859 provided that the election should be held
and the votes canvassed in the same manner as the votes for
state senator of Fond du Lac county were canvassed. Suppose
the question had arisen before the canvassing board of the
county, as to who was entitled to the certificate of election
for the office of state senator of that county, what then would
have been the duty of the canvassers? Sec. 107, chap. 7,
R. S., 1858, provides that whenever it shall satisfactorily ap-
pear that any person has received a plurality of the legal
votes cast at any election for any office, the canvassers shall
give to such person a certificate of election, notwithstanding
the provisions of law may not have been fully complied
with in noticing or conducting the election, or canvassing or
returning the votes, so that the real will of the plurality may
not be defeated by any informality. It appears to us that
this proceeding to determine the question as to whether a
county has been divided or not, is strictly analagous to a
proceeding, in the nature of a *quo warranto*, to determine the
right of a person to hold and exercise an office, and that sub-
stantially the same rules of law are applicable to it. Now
it is the well settled doctrine of this court, that in a contest
between individuals as to the right to an office, it will go
back and rectify any omission or mistake of the canvassing
boards, and give effect to the real will of the electors, as ex-
pressed through their ballots. *Carpenter vs. Ely*, 4 Wis.,
420; *Bashford vs. Barstow*, id., 567, and cases there cited.
We therefore do not think the votes in the towns and wards
heretofore alluded to, should be rejected and thrown out for
the reason that no separate poll-lists were kept of the names
of the persons who voted upon the question of division.

June Term,
1860.

STATE ex rel.
SPAULDING
v.
ELWOOD.

It further appears from the relation and writ, that certain votes were cast " for Ripon attached," "for Ripon detached," " for division," and " against division," and that these ballots were counted by the canvassing boards as they supposed they were intended by the electors to be cast upon that question. Now it is contended that these ballots should not be counted at all, because they are not in the precise form prescribed in the act of the legislature. The law provided that any qualified elector, &c., might vote " for detaching Ripon " or " against detaching Ripon," on a separate ballot, and it is insisted that no ballots should be counted except those which contained one or the other of these expressions. The doctrine is not controverted, that the intention of the elector is generally to control in determining for what person or what proposition a ballot should be counted, and that where this intention is not manifest from a bare inspection of the ballot itself, facts and circumstances of a public character connected with the election are sometimes resorted to for the purpose of ascertaining the intention of the elector; in other words, that the ballot, like a contract, may be read in the light of surrounding circumstances, in order more perfectly to understand the intention and meaning of the voter. But it is insisted that this familiar doctrine can have no application to this case, for the reason that the legislature has prescribed the form of the ballot, or the exact words in which an elector should express his will, upon the question of the division of Fond du Lac county. It is true the legislature, having regard to the nature of the proposition to be submitted to the people, for the convenience of the electors, and to secure certainty in the expression of their will upon the proposition, prescribed a form for the ballot, but we do not think they thereby intended to exclude all other ballots not in this precise form. There is nothing imperative in the language of the statute that the elector should express his will in certain words and no other. Suppose an elector had written upon his ballot, "I am opposed to having township number sixteen north, of range number fourteen east, embracing the territory of the town and city of Ripon, detached and set off from the county of Fond du Lac, and to its being attached and

annexed to the county of Green Lake;" will any one serious-

ly contend that such ballot should not be counted against di-
vision? And is there any good reason for saying that the legis-
lature intended that a ballot in this form should be rejected and
thrown out by the canvassing board? If we hold that the legis-

lature intended that an elector should only express his will up-
on the subject of division in the exact words given in the law,
then a ballot in the form supposed should be rejected. But
we cannot think that such was the intention of the legislature.
And when the intention of the elector can be clearly ascer-
tained from the ballot itself, or with the aid of compe-
tent evidence *dehors* the ballot, such intention should have
effect, and the vote should be counted. So, as a matter of
law, we cannot say that no votes can be counted except those
in the form prescribed by the act.

It follows from these views that the demurrer must be
overruled.