GILKEY, Appellant, vs. McKINLEY, Respondent.

*January 8 — January 28, 1890.*

*Elections: County superintendent: Female suffrage.*

[1. Whether the right given to women by sec. 1, ch. 211, Laws of 1885, to vote at elections pertaining to school matters, includes the right to vote for any school officer chosen at a general election, not determined.]

2. No means having been provided by law by which women can vote for the school officers only, at elections where other officers also are to be chosen, their right to vote at such elections, if it exists under sec. 1, ch. 211, Laws of 1885, cannot be exercised without further legislation. CASSODAY, J., dissents.

APPEAL from the Circuit Court for *Oconto* County.

At the general election held in November, 1888, at which presidential electors, representatives in congress, members of the legislature, and state and county officers were elected, the parties to this controversy were opposing candidates for the office of county superintendent of schools for Oconto county. *Gilkey* received 603 votes for such office, the legality of which votes is not questioned, and *McKinley* received 617 votes therefor, as appears by the official canvass made by the proper canvassing board. In one of the election districts of the county a separate ballot box was provided, and the ballots of thirty-three women were received and deposited therein. These thirty-three ballots were for the office of county superintendent alone, and all were cast for *McKinley*. They are included in the 617 ballots so cast for him.

Claiming that the thirty-three ballots were illegally counted for *McKinley*, *Gilkey* instituted this proceeding under sec. 8, ch. 464, Laws of 1885, in the circuit court, to procure the exclusion thereof from the count of votes. On the above facts, the circuit court held that the ballots were legally cast, by virtue of ch. 211, Laws of 1885, and ad-

judged that *McKinley* is entitled to the office.   From such judgment *Gilkey* appeals to this court.

For the appellant the cause was submitted on the brief of *A. Reinhart.*

For the respondent there was a brief by *Webster & Wheeler,* and oral argument by *W. H. Webster.*

LYON, J.   If the thirty-three ballots cast by women were legally received and counted for *McKinley,* he was elected to the office in controversy.   Otherwise *Gilkey* was elected thereto.

The learned circuit judge held: (1) That by virtue of sec. 1, ch. 211, Laws of 1885,[1] women having the qualifications prescribed in that section may lawfully vote for county superintendent of schools at any election at which such officer is to be elected; and, (2) although the statute (R. S. sec. 32) requires that the names of all persons voted for by any elector at a general election shall be upon a single ballot, that it is competent for any board of inspectors of such election to provide a separate ballot box, and receive and deposit therein the ballots for such office of women so qualified, and to count and include the same in the canvass of votes cast at such election for such office.

The first of these propositions has not been adjudicated by this court, and it is still an open question whether ch. 211 confers upon women the right to vote, under any circumstances, at any other than school district elections. The question will not be determined on this appeal, but it will be assumed, for the purposes of the case, that ch. 211 has a broader signification.   That is to say, it will be as-

---

[1] Sec. 1, ch. 211, Laws of 1885, provides: "Every woman who is a citizen of this state, of the age of twenty-one years or upwards, . . . who has resided within the state one year, and in the election district where she offers to vote ten days next preceding any election pertaining to school matters, shall have a right to vote at such election."— REP.

sumed that if any means are provided by law by which women may vote at other than school district elections, for elective school officers, such as school superintendents and commissioners and the like, separate and distinct from other officers to be chosen at the same election, it is competent for them thus to vote. The question to be determined is, therefore, Are any such means provided or authorized by law?

It is freely conceded that the method adopted by the board of inspectors, in the election district in which the thirty-three women voted, was effectual to enable them to vote for county superintendent of schools alone, without any risk of their voting effectively for any other of the numerous officers chosen at that election. Had the separate ballot box not been resorted to, the same result would have been accomplished had those women been permitted to vote open ballots, which the inspectors could see contained only the one name for that single office. Again, had the inspectors marked each of such ballots with the name of the woman voting it, although they did not see its contents, they would have had the means of confining such ballots to the office of county superintendent, and thus preventing the possibility of fraud. But the question is not whether the election inspectors adopted a mode of procedure which confined the ballots of the women to that particular office, or might in their ingenuity have found some other method which would have effectually accomplished the same result. The question is, Were their proceedings authorized by law?

The statute requires the names of all persons voted for by an elector at any general election to be upon one ballot, and the inspectors are prohibited from opening such ballot or permitting it to be opened or examined. R. S. sec. 32. It does not provide expressly that all such ballots shall be deposited in one box, but it clearly contemplates but one

class of voters, each of whom is competent to vote for all officers to be chosen at the election. When it was enacted there was but one class of voters. The right of each elector, under the constitution (art. III), was equal to that of every other. The statute was framed in view of the existing conditions, and it provides no effective procedure to enable another class of electors, having only the right to vote for a portion of the officers to be chosen at the election, to cast their ballots for such portion. The single ballot and the secret ballot provided for in the statute are against the exercise of such limited right under existing laws.

Sec. 32, R. S., is still in force, and the inability of a class of voters, having only such limited right of suffrage, to vote at a general election, still exists unless the statute has been amended and such disability removed by sec. 1, ch. 211, Laws of 1885. That section owes its vitality to a direct vote of the electors of the state, and a like vote would doubtless be required to repeal it. Although under the special provisions of subd. 4, sec. 1, art. III of the constitution, sec. 1, ch. 211, Laws of 1885, is in the form of a statute, yet it is essentially a part of the constitution. It is the same as though sec. 1, art. III, had been amended by adding a subdivision like this: " Women having the qualifications of male electors, except sex, may vote at any election pertaining to school matters." Such an amendment would be, and consequently sec. 1, ch. 211, is, self-executing, so far as school district elections are concerned, because there is still but one class of voters, and hence no further legislation is required to secure to women the right to vote at such elections. Perhaps, also, the provision is self-executing in the case of an election at which none but school officers are to be chosen although not a school district election.

But sec. 1, ch. 211, is not self-executing in respect to an election at which officers other than school officers are to be chosen, notwithstanding school officers are to be chosen

at the same election. The reason why it· is not has already been stated. It is that neither ch. 211 nor any statute has prescribed a procedure by which the ballots of a new class of voters, with a limited right of suffrage, can lawfully be received by the election board. This subject is referred to, and the necessity of further legislation suggested, by ·Mr. Justice CASSODAY, in the opinion written by him in *Brown v. Phillips*, 71 Wis. 239.

The distinction between those constitutional provisions which are self-executing and those which are not, and the incidents pertaining to each class, are so clearly stated by Judge Cooley in his invaluable treatise on Constitutional Limitations that we cannot do better than.to quote a para· graph therefrom. He says: " A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given ˙may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those prin- ciples may be given the force of law. Thus,·a constitution may very clearly require county and town government; but if it fails to indicate its range, and to· provide proper ma- chinery, it is not in this particular self-executing, and leg- islation is˙essential. Rights in such a case may lie dormant until statutes shall provide for them, though, in so far as any distinct provision, is made which by itself is capable of enforcement, it is law, and all supplementary legislation must be in harmony with it." Const. Lim. (5th ed.), 100.

So far as general elections are concerned we must, there- fore, hold that sec. 1, ch. 211,·Laws of 1885, does not supply a sufficient rule for the enjoyment of the right therein given, but ˙only indicates a principle which requires further legis- lation to give it the force of law. Any other construction would almost necessarily lead to many absurdities and abuses. For example, were that section held self-execut-

Gilkey vs. McKinley.

ing in respect to general elections, each board of inspectors would be left free to adopt its own methods to enable women to vote for school officers to be chosen at such elections. Several feasible methods to accomplish the purpose have been, and others may readily be, suggested. Thus, we might have our elections lawfully conducted in a great variety of methods, according to the judgment or caprice of the several election boards. Such a result is opposed to the whole spirit and policy of our election system. Furthermore, we have no express statute or constitutional provision making it the duty of the several election boards to adopt some or any method to secure the right of suffrage to women in a case like this. Were ch. 211 held to be self-executing, then it would necessarily be left entirely to the discretion of the several election boards whether they will or will not adopt a method for securing such right. No law says they shall do so. None imposes a penalty or liability upon them for failure to do so. The whole matter would rest absolutely in their discretion. As in this case, one election board in a county may adopt a method by which the women in that district may cast their ballots for an elective school officer, while all other election boards in the same county may refuse or neglect to do so, and thus all women in the county, outside that one district, would be disfranchised. Hence, to hold ch. 211 self-executing would be to hold that the several election boards in the state may disfranchise a large class of legal voters, or portions of such class, without violating any express law or subjecting themselves to any liability or punishment whatever. At the same time, such a ruling would relieve the legislature from any responsibility in the matter. But if it is ruled that ch. 211 is not fully self-executing, and requires further legislation to give effect to some of its provisions, the legislature will be held to the obligation to effectuate, by appropriate legislation, the expressed will of the people,

and the absurdities and incongruities above mentioned will be avoided.

It must be remembered that this discussion goes upon the hypothesis, assumed at the outset for the purposes of this case only, that the right of women to vote at elections pertaining to school matters, conferred by ch. 211, includes their right to vote for any school officer chosen at a general election. We make no ruling on this proposition.

For the reasons above stated, we conclude that the votes of the thirty-three women for the respondent, *McKinley*, are illegal, and should not have been counted for him in the canvass. It follows that *Gilkey*, the appellant, was elected.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to that court to render judgment for the appellant in accordance with this opinion.

CASSODAY, J.   Ch. 211, Laws of 1885, having been approved and ratified by the people, the same became a valid act, and, until abrogated in the way prescribed by the constitution, is binding not only upon inspectors of elections but upon courts and even the legislature. By virtue of that act as construed by this court the right of suffrage was extended to women of the requisite citizenship, age, and residence, in " the choosing of any school officers or school employees." *Brown v. Phillips*, 71 Wis. 253. In that case no attempt was made by the plaintiff to vote for any such officer or employee, but only for mayor, alderman, supervisor, city clerk, and comptroller; and hence it was there held that the ballot for such officers was properly rejected. What was there said as to the difficulties in the way of receiving the votes of women, even for such school officers, wherever the law required them to be voted for upon the same ballot with the names of candidates for other offices,

and the seeming necessity for further legislation to secure the full benefits of the right sought to be conferred by that chapter, was for the sole purpose of calling the attention of legislators to the subject, as no such question arose in that case.

We are not here called upon to consider the right of inspectors of election to reject ballots sought to be voted by women, whether folded so as to conceal the names of the candidates voted for, or open for inspection by the election board. If the ballots of women having the right to vote for only school officers should be concealed, accepted, and deposited in the same box with the ballots of those having the right to vote for all officers, it would manifestly open the door to gross frauds, with very little or no means of detection. If an open ballot should be offered by such partially qualified elector, and be accepted by the board, and deposited in the same box with the ballots of fully qualified voters, then it would cast upon such board the responsibility of inspecting each ballot of such partially qualified voter *as offered*, and then to reject or receive the same depending upon whether it contained the name of a candidate for a school office only, or the same with candidates for other offices. But, for obvious reasons, "such inspectors are expressly forbidden to open any ballot, or to permit it to be opened or examined, but are required to deposit the same in the box." Sec. 32, R. S.; *Brown v. Phillips*, 71 Wis. 254. True, the voter might waive her right to cast a secret ballot, but, should she not expressly do so, the right of the inspectors to examine the ballot would still be wanting.

Where there is but one ballot box provided, there would seem to be, as the statutes now stand, no escape from the alternatives of rejecting the ballot of such partially qualified electors, or of violating the statute cited by examining each ballot, or opening the door to the grossest frauds, as

suggested. But it would seem that the statutes nowhere prohibit such inspectors from providing themselves with more than one ballot box. On the contrary, the statute expressly commands that "there *shall* be provided and kept by the clerk of *each* town, city, or village, at the expense of such town, city, or village, suitable *ballot boxes* for *each* poll therein, with a suitable lock and key to *each*, and there shall be one opening through the lid of *each* such box, of no larger size than shall be sufficient to admit a single *closed* ballot." Sec. 30, R. S. No specific limit to the number of ballot boxes to be thus provided is here prescribed.

In the case at bar, the authorities of one of the towns in the county provided an extra ballot box for the reception of votes cast by women for the office of superintendent of schools in the county. Thirty-five women in that town voted for such officer, and their ballots were all received and deposited in such separate ballot box by the election officers. All of those votes except two were cast for the defendant, and if they were properly counted, as held by the trial court, then he was entitled to the office; otherwise not. Presumably the women so voting were of the requisite citizenship, age, and residence; otherwise their votes would not have been received. In receiving such votes and depositing the same in such separate ballot box so provided, the inspectors of election must be presumed to have done what they conceived to be their duty as such officers. There is no pretense of any fraud or attempt at fraud on the part of any one; and by thus keeping such ballots in a separate box there was no possibility of fraud by reason of such ballots being cast. The women thus voting had previously been given the legal right to vote for the officers prescribed by the act. The real question presented, therefore, is whether they should be deprived of such right merely because the statutes fail to specifically require the inspectors of election to do precisely what they

did in keeping a separate ballot box and depositing such ballots in such box.

As indicated, the language of the statute as to providing and keeping ballot boxes and receiving and depositing ballots is general, leaving some things to the discretion of the election officers. The rules for construing such statutes are stated by Mr. McCrary thus: "If, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and *directory if they do not,* affect the actual merits of the election." ' The provisions of the statute "touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, *are directory.* . . . The principle is that irregularities which do not tend to affect results are not to defeat the will of the majority," which should " be respected, *even when irregularly expressed.* . . . It is a rule, well grounded in justice and reason and well established by authority and precedent, *that the voter shall not be deprived of his rights as an elector, either by the fraud or mistake* of the election officer, if it is possible to prevent it. . . . It is unjust that the voter should be disfranchised because the officer receiving his ballot deposited it in the wrong box. . . . Where a statute authorizes an election to be held by a county, city, or township, for the purpose of determining a given question, . . . and where such *statute points out no mode* for conducting such election, it . . . should be conducted in the manner prescribed by law for other elections by the same body." These several quotations will be found in McCrary's American Law of Elections, §§ 126, 127, 131–133, 200, 415. Among the adjudications upon which they are based are: *People ex rel. Hayes v. Bates,* 11 Mich. 362; *People ex rel.*

*C. & R. R. R. Co. v. Dutcher,* 56 Ill. 144.   See, also, *Farrington v. Turner,* 53 Mich. 27; *Stemper v. Higgins,* 38 Minn. 222.   The want of time precludes any special examination; but it is believed that the rules of law thus stated are sanctioned by numerous adjudications.   Besides, some of them have heretofore received the expressed sanction of this court.  *Att'y Gen. ex rel. Carpenter v. Ely,* 4 Wis. 428; *State ex rel. Spaulding v. Elwood,* 12 Wis. 557; *State ex rel. Burnett v. Pierpont,* 29 Wis. 610.   It would seem that all statutes regulating elections should be construed, if possible, so as to secure to every qualified elector, and to them only, the right to vote and to have the ballot received and counted.

Applying the rules stated to the case at bar, and it would seem that the election officers were justified in receiving and counting the thirty-five votes cast by women; and hence that the defendant was duly elected county school superintendent.   Such reception and counting of such votes does not appear to have been in conflict with any statute, and moreover served the purpose of the act giving such right to vote.   The mere fact that the officials of other towns may have refrained from furnishing such extra ballot boxes and refused to receive and keep separately votes which may have been offered by such partially qualified voters, in no way militates against the rightful counting of votes actually cast by such legally qualified voters.   The responsibility of any confusion or diversity of action which may arise does not rest upon the courts, but upon that department of the state government which has conferred upon women such legal right to vote, without prescribing a specific mode whereby such right may be exercised and enforced.

For the reasons given I am forced to withhold my assent from the decision of the court in this case.