STATE EX REL. CITY OF MANITOWOC, Appellant, vs. GREEN and others, Respondents.

*March 22—April 9, 1907.*

*Schools: Change from district to city system: Mandamus to compel delivery of property: Questioning validity of adoption of general charter: Notice of special district meetings: Sufficiency.*

1. Where a city in which the schools have been conducted under the district system as provided in the general statutes adopts that part of the general city charter law which is applicable to schools, and a board of education is appointed accordingly, *mandamus* on the relation of the city is the proper remedy to compel the district officers to turn over the school property in their possession to the new board of education.

State ex rel. Manitowoc v. Green, 131 Wis. 324.

2. In such proceeding by *mandamus*, commenced more than three months after the attempted and assumed adoption of the general charter provisions, the defendants are precluded by ch. 165, Laws of 1899, from calling in question the validity of such assumed adoption.

3. Notice of a special meeting of a school district, stating merely that it would be held at the schoolhouse in said district, was insufficient where there were two schoolhouses in the district.

4. Notice of a special meeting of a school district in a city, stating that the purpose of the meeting was to determine whether or not the district wished to ratify the adoption by the city of the provisions of the general charter law relating to schools, was not sufficient to authorize an election at such meeting to change the district system for schools to the city system under the general charter law.

APPEAL from a judgment of the circuit court for Manitowoc county: E. B. BELDEN, Judge. *Affirmed.*

This is an action of *mandamus* to compel the school board of Joint School.District No. 1 of the city and town of Manitowoc to turn over to the city all property belonging to the district or show cause to the contrary. The defendants having made return to the writ and the relator having made answer to such return and the issues so formed having been tried by the court, at the close of the trial the court found as matters of fact, in effect: (1) That the city is a municipal corporation of the third class, operating under a special charter which up to July 7, 1905, contained no provisions in relation to schools or to any city school system of government, and that the public schools of the city prior to that date had been conducted and managed under the public school district system, as provided by the general statutes. (2) That all the territory within the city was divided into four separate school districts known as School District No. 2 and School District No. 7 of the city, and also Joint School District No. 1 and Joint School District No. 4 of the city and town of Manitowoc, each of said joint districts comprising within its limits certain territory of the town in addition to the territory of the city.

(3) That at the time of issuing the writ each of said four dis-tricts was organized and represented by duly elected officers in the lawful possession of all the property of the district. (4) That May 22, 1905, an ordinance was introduced into the common council to amend the special charter of the city by adopting all the provisions of subch. XIV, ch. 40a, Stats. (1898), being secs. 925—113 to 925—119, and the same was laid over under the rules; that the same was then ordered to be considered at a regular meeting July 3, 1905, and notice thereof was directed in the meantime to be published in the official paper, (5) and the same was published in such paper June 10, 16, and 23, 1905. (4) That July 3, 1905, no quo-rum being present, the meeting adjourned to July 7, 1905, when a majority of the common council voted in favor of the adoption of such ordinance. (6) That July 28, 1905, a special election was held in each of said four school districts; that the notices of such elections were wholly insufficient in that they failed to state that a change of the school system would be considered at such meetings and failed to sufficiently specify the business to be transacted and which was attempted to be transacted at such meetings, and failed in two of said districts to definitely state the place where such meeting would be held; that in each of two of said districts (including Joint School District No. 1, of which the defendants herein were officers) there were two schoolhouses at considerable distance apart, and the notices posted thereon for said meeting recited that such meeting would be held at the schoolhouse in said district, without specifying in which schoolhouse such meeting would be held; that the notice for such meeting July 28, 1905, in Joint School District No. 1, represented by the answering defendants, was directed to the qualified electors of Joint School District No. 1 of the city and town of Manitowoc, "that a special meeting of said district will be held at the schoolhouse in said district" July 28, 1905, at 8 o'clock in the afternoon, "to determine whether or not said school district

wishes to ratify the adoption of the general charter law of the state of Wisconsin applicable to schools in accordance with the provisions of chapter 287 of the laws of Wisconsin for the year 1899, which said general charter provisions have recently been duly adopted by the city council of the city of *Manitowoc.*" It also gave the form of the ballot. That the notice in each of the other districts was substantially the same and was posted on the door of each of said schoolhouses. (7) That pursuant to such notice a meeting was held in Joint School District No. 1 July 28, 1905, at which a resolution was adopted confirming and ratifying such action of the common council, and at which meeting the whole number of votes cast was 376, including the votes of 118 women, of which number 197 votes were cast for the adoption and ratification of the general charter law relating to schools and 179 were cast against the adoption and ratification of the general charter law relating to schools, and that in each and all of the other districts a large number of women was present and voted on such resolutions. (8) That at and during the submission of such questions in each of said joint districts voters from the town and city indiscriminately were present and voted thereon. (9) That August 7, 1905, the mayor of the city assumed to appoint a board of education for the city, consisting of one commissioner from each of the seven wards, and in addition thereto three commissioners at large, and on August 12, 1905, the board of aldermen by its vote attempted to confirm the same, and at divers times thereafter the board so appointed qualified by taking the constitutional oath of office, elected officers, appointed committees, and assumed to act as such, but never at any time had possession of the school property of the city nor any control of the schools therein or any funds belonging to said schools or their teachers, employees, or other officers, but that the administration of said schools and school property was at all times exercised by and under the control of the several district boards mentioned. (10) That at the

annual meeting of Joint School District No. 1 held July 3, 1905, it was resolved to unite all the districts and joint districts into one joint district to be known as District No. 1 of the city, with the view of establishing a city system of schools and establishing one high school for the city; that said meeting was adjourned to July 6, 1905, and that at such adjourned meeting a resolution was offered to the effect that such application ought to be granted, and the aldermen residing in the district were instructed accordingly, which resolution was referred to a committee with instructions to investigate and report at an adjourned meeting to be held July 17, 1905; that such adjourned meeting declared itself to be opposed to any scheme for the consolidation of the several school districts, and that the school board take all necessary legal steps toward establishing a central high school under the federal system, leaving the grades of the several districts to be maintained and operated as they were. (11) That October 2, 1905, the board of aldermen resolved to levy a special tax of three and one-half mills on the dollar, but the collection thereof was enjoined by the court (15) October 5, 1905. (12) That the new school board so appointed never exercised any duties or functions or became possessed of any such school property. (13) That the new board made demand upon the school district boards, and especially upon the defendants, for all property of the four districts to be delivered to the treasurer of the city for the use of the board. (14) That each of said four district boards continued its functions as before. (16) That all matters and allegations set forth in the return were true and sustained by the evidence.

As conclusions of law the court found, in effect: (1, 2) That the city charter had not been so changed or amended as to confer upon the city power to govern and control the public schools therein, and that each of the four districts was lawfully engaged in managing the schools and school property therein. (3) That no sufficient notice of the time and place

for adopting the proposed ordinance was given, and that the board of aldermen had no jurisdiction to act thereon, and that its action in adopting such general charter was null and void. (4, 5, 6) That the electors of the four several districts could not ratify the action of the city; that the resolution passed and the action taken at the special elections held in the several school districts July 28, 1905, were null and void; that the notices for such special election contained no mention that any such action would be taken, and the votes thereon were illegal and inoperative; that in Joint School District No. 1 and School District No. 7 the notices of election were insufficient because they failed to specify with reasonable certainty the place where the election would be held; that the special election in each of the four districts July 28, 1905, was void and inoperative to change the district system of schools to the city or general charter law system of schools, for the reason that no such action was mentioned or expressed in the notices given or posted for said meetings as intended to be brought before the same for action, nor did such notices specify such change of system as one of the questions to be presented to the voters for their decision. (7) That the action of Joint School District No. 1, July 3 and 17, 1905, was binding on that district for one year. (8) That the mayor never had any power to appoint such new school board, and that the board never had any power or authority to control or govern said schools, nor any right, power, or possession of such school property therein, and that the city treasurer never acquired any right to the possession of the moneys, funds, or credits belonging to said districts. (9, 10) That all the acts of said school board so appointed were void. (11) That the defendants are not barred from their defense in this action by ch. 165, Laws of 1899, and the proceedings in the several elections in said school districts. (12) That the defendants are entitled to an order and judgment dismissing the *mandamus* proceedings herein, with costs.

From the judgment entered in accordance with such findings the relator appeals.

*R. W. Burke,* city attorney, for the appellant.

For the respondents there was a brief signed *L. J. Nash* and by *J. S. Anderson,* of counsel, and oral argument by *Mr. Anderson.*

CASSODAY, C. J.     The view we have taken of this case makes it unnecessary to consider all the questions discussed by counsel.

1. It is claimed on the part of the defendants that the relator has mistaken his remedy—that if he has any remedy it is by *quo warranto* and not by *mandamus.*

"The proceeding by *quo warranto* is the proper and appropriate remedy for trying and determining the title to a public office and of ascertaining who is entitled to hold it, of obtaining the possession of an office to which one has been legally elected and has become duly qualified to hold, and also of removing an incumbent who has usurped it, or who claims it by an invalid election, or who illegally continues to hold it after the expiration of his term." Mechem, Pub. Off. § 478.

This is not a proceeding to oust an actual incumbent of an office and admit another to the same, nor is it a proceeding to test the validity of a statute under which the offices held by the defendants were created. Id. It was held by this court long ago:

"A *mandamus* will issue only where it appears that there is some officer in being having the power and whose duty it is to perform the act commanded by the court." *State ex rel. Carpenter v. Beloit,* 21 Wis. 280.

The person so sought to be commanded must, at least, be a *de facto* officer. Id. Such ruling is fully sanctioned by Mechem, Pub. Off. § 939. See *State ex rel. Mercer v. Sullivan,* 83 Wis. 416, 53 N. W. 677; *State ex rel. Jones v. Oates,* 86 Wis. 634, 57 N. W. 296. The defendants in this case did not usurp or intrude themselves into the offices held by them

respectively. If they committed any wrong it consisted in continuing to exercise the functions of the offices after the right to do so had ceased. They rightfully came into the possession of such offices and were, at least, *de facto* officers at the time the writ was issued, and hence had power to obey the mandate of the court whatever it might be. The purpose of the writ is to compel the defendants to turn over to the new board of education of the city, appointed by the mayor pursuant to the proceedings mentioned in the foregoing statement, all records, books, papers, bonds, inventories, bills, vouchers, contracts, and all property, real and personal, in their possession as officers of such districts. Such property belonged to the public and was devoted to the use of the public, and we perceive no reason why *mandamus* is not the proper remedy to determine the rightful custodians of such property and to secure their possession of the same. *State ex rel. Jones v. Oates, supra; State ex rel. McCoale v. Kersten,* 118 Wis. 287, 292, 293, 95 N. W. 120; *State ex rel. South Milwaukee v. Fowle,* 103 Wis. 388, 79 N. W. 419. In this last case a city was created out of a former village, pursuant to the general charter, and it was held that the government and administration of all schools within the territorial limits of the city devolved upon the new board of education, when elected, provided for by secs. 925—113 to 925—116, Stats. (1898), and that "thereupon the powers and functions of the former governing boards ceased and the [new] board of education is entitled to the possession and control of the schoolhouses, records, books, property, school library, etc., remaining in the hands of the former governing boards, and on demand therefor and refusal to deliver the same such right can be enforced by *mandamus*." We must hold that the relator has not mistaken his remedy.

2. It is further urged on the part of the defendants that the ordinance adopted by the common council of the city July 7, 1905, to amend the special charter by incorporating therein

secs. 925—113 to 925—119, Stats. (1898), with all amend-
ments thereto, is null and void by reason of the facts found
by the court and mentioned in the foregoing statement, and
especially by a failure to give the requisite notice for such
action of the council prescribed by the statute.  Sec. 926,
Stats. (1898).   On the part of the relator it is claimed that
whatever irregularities or defects there may have been in such
adoption of the ordinance, they were all cured by ch. 165,
Laws of 1899, and that the defendants are thereby barred
from taking advantage of such defects and irregularities in
this action.   Omitting what is not applicable here, that act
declares:

"In any case . . . where the common council of any city
incorporated by special act shall have undertaken and as-
sumed to adopt, in whole or in part, the provisions of the gen-
eral city charter law of this state, and such city and its offi-
cers shall have assumed thereafter in good faith to act under
and to exercise the powers conferred by the provisions of law
so assumed to be adopted, any question of the *validity of such
assumed adoption* and of the ordinance and proceedings there-
for may be tested by *certiorari* or by any other proper action
or proceedings brought directly for the purpose of vacating
or setting aside the same at any time within three months
after such assumed adoption, but not thereafter. . . . No
such assumed adoption nor any ordinance or proceeding for
such adoption of the whole or any part of such general city
charter law shall be in any manner called in question or held
to be invalid in any action or proceeding except one *brought
directly* for that purpose within the time hereinbefore limited
therefor, unless the same shall have been duly vacated or set
aside by a court of competent jurisdiction."

That act was passed just prior to the decision in *State ex
rel. South Milwaukee v. Fowle,* 103 Wis. 388, 79 N. W. 419,
and was probably suggested by the controversy between the
two boards of education in that action.   The manifest pur-
pose of the act was to prevent such controversy as to the
validity of such ordinance, unless brought within the time and

in the manner therein prescribed. There can be no question but that the common council undertook and assumed to adopt the provisions of the general charter mentioned, nor that the city and its officers thereafter assumed in good faith to act under and to exercise the powers conferred by the provisions of law so assumed to be adopted. The special election ordered and held July 28, 1905, was based on the assumption in good faith that such ordinance had been legally adopted. Upon the same assumption the mayor appointed a board of education August 7, 1905, and the common council confirmed the same August 12, 1905, and the members of the board so appointed took the requisite oath of office. Upon the same assumption the common council adopted a resolution levying a special tax on the assessed valuation of all the property in the city October 2, 1905. Upon such assumption such new school board made demand upon the school district boards and the officers of all and each of said four districts, and especially on the defendants, for the delivery to such new board of all and singular the property belonging to said school districts, but the same was refused. This action was not commenced until October 23, 1905, and the return of the defendants to the writ was made November 17, 1905. Besides, the act in question provides, in effect, that the validity of such ordinance should be tested only by *certiorari* or other proper action or proceeding brought *directly* for the purpose of vacating or setting aside the same, within the time prescribed, and should not be called in question in any action or proceeding "except one brought directly for that purpose within the time" prescribed. We must hold that by the act mentioned the defendants are barred from questioning the validity of such ordinance in this action.

3. The defendants contend and the trial court reached the conclusion that the special election held July 28, 1905, was null and void for want of the requisite notice of such election. In each of two of the districts there were two schoolhouses a

State ex rel. Manitowoc v. Green, 131 Wis. 324.

considerable distance apart, and the notice posted for the respective meetings simply recited that such meeting would be held at the schoolhouse in said district, without specifying in which schoolhouse such meeting would be held. Nothing could be more uncertain and misleading as to the place where such meeting would be held. One of the two districts where the place of holding the meeting was so indefinitely stated was Joint School District No. 1, of which the defendants herein were officers. Besides, each and all of such notices failed to state that such proposed change of the school system would be considered at such meetings. The mere notice to the qualified electors that the meeting was to determine whether or not they wished to adopt and ratify the provisions of the general charter law relating to schools, which had been adopted by the city council, did not give the requisite information as to the business to be transacted or which was attempted to be transacted. We must hold that such notices were insufficient to authorize such election and change of school system.

As to what electors are qualified to vote at such election there is a sufficient statement in sec. 925—113, Stats. (1898), as amended by ch. 287, Laws of 1899. Counsel contend that women had no right to vote at such election, and cite *Brown v. Phillips,* 71 Wis. 239, 36 N. W. 242, and *Gilkey v. McKinley,* 75 Wis. 543, 44 N. W. 762, but fail to cite *Hall v. Madison,* 128 Wis. 132, 107 N. W. 31. But the trial court did not pass upon the question and we do not.

*By the Court.*—The judgment of the circuit court is affirmed.

Timlin, J., took no part.