STATE ex. rel., PHELPS VS. GOLDTHWAITE.

The fact that the board of education of an incorporated city, have exempted such city from the jurisdiction of the county superintendent of schools for the district in which it is situated, for one year, under chapt. 179, Laws of 1861, does not render a resident and elector of said city inelegible to the office of county superintendent of schools for such district, at an election held for that office during the same year.

Ballots cast at an election, like other writings, are construed in the light of the surrounding facts, in view of which the elector used the language on his vote, and where the description or designation of the office on a ballot, for which a candidate is voted for, is applicable to two or more offices, parol evidence is admissible to show which office was intended by the elector.

APPEAL from the Circuit Court for *Dodge* County.

This was an action in the nature of a *quo warranto*, to determine the right to the office of county superintendent of schools of one of the senate districts of Dodge county. The relator *Phelps* claimed in his complaint to have been elected to the office in question for the 18th senate district at an election held in November 1861, and that previous to such election it was given out and understood that he would be a candidate for that office in such district, and that the defendant was at such election a candidate for the same office and received 1269 votes therefor and that the relator received for the office of " county superintendent of schools " for said district 1199, and that

there were cast for him at said election 128 votes for "superintendent of schools," that such votes so given were intended to be cast and given to the relator for the office of "county superintendent of schools" for said district and that there was no person of the same name of the relator in said senate district at the time of said election, and that in the county canvass the 128 votes so cast for the relator were rejected and the canvassers refused to count them as votes cast for the relator for the office of county superintendent of schools, and having rejected said votes, they declared the defendant elected to said office, but that in fact, counting said votes so rejected, the relator was elected to said office by a majority of 58 votes, of the votes cast in said district for the said office.

The relator claimed that the defendant had usurped and intruded into said office without any legal warrant or authority, &c., and that the relator was entitled to have, hold, use and exercise the said office, &c. The defendant in answer alleged that the relator then was and for more than five years past had been a resident and citizen of the city of Beaver Dam, in said county, and that on the 15th day of August, 1861, the board of education, of the city of Beaver Dam, elected by resolution, that the schools within the limits of the city should be exempt during the then coming year from the jurisdiction of the county superintendent who might be elected under the said law of 1861. That the 128 votes so cast for the relator for "superintendent of schools" and which were rejected by the county canvassers, were cast by voters who upon the same tickets at the same time also voted for H. G. Winslow for "superintendent of schools" and such votes were rejected for the reason that it appeared that said Winslow and Phelps were, each voted for, for the same office on the same tickets.

At the trial it was admitted that the city of Beaver Dam was exempted from the operation of chapt. 179, Laws 1861, and that the relator filed his oath of office within the time re-

quired by law; that the defendant entered upon the duties of the office of county superintendent of schools on the first Monday of January, 1862, and continued to exercise the same. That the 128 votes cast for the relator for "superintendent of schools" and which were rejected, were cast by voters who upon the same tickets and at the same time, voted for H. G. Winslow for "superintendent of schools," and that said H. G. Winslow, at said election, resided in the county of Racine, and was a candidate for state superintendent, at said election, and for no other office, and it was so known and understood by the electors throughout the state. The circuit court found that the 128 votes so cast for the relator for the office of "superintendent of schools" were intended to be cast for him for the office of county superintendent of schools for the 18th senate district, and that the relator received a majority of the votes cast for said office at such election, and gave judgment ousting the defendant and declaring the relator entitled to have, hold, use and exercise such office. The defendant took exceptions to the decision and appealed.

*Billinghurst, Lewis & Fribert*, for the appellant. 1. The city of Beaver Dam having exempted itself from the operation of the law, creating the office of county superintendent of schools, and *Phelps* being a resident of said city, was not eligible to the office. Laws of 1861, chapt. 179. 2. The extent to which the courts have gone in inquiring into the intent of the voter is that of *personal identity* as to candidate. *People v. Ferguson*, 8 Cow., 102; *Carpenter v. Ely*, 4 Wis., 420; *People vs. Cook*, 4 Seld., 67. One voter cannot vote for two men for the *same office*. *People vs. Seaman*, 5 Denio, 409; *People vs. Loomis*, 8 Wend., 369.

*H. W. Lander* and *E. Elwell*, for the respondent.

*By the Court*, PAINE, J. It is generally true that a person eligible to an office must be an elector qualified to vote for such officer. And perhaps, in this case, if the city of Beaver

Dam had been absolutely excluded from participating in the election of the county superintendent of schools, or from any supervision and control of that officer during his entire term, a reasonable construction of the law would imply a disqualification of a resident of that city to hold that office. But such was not the case. On the contrary, the city was a part of the district for which such officer was elected. And although, by section 11, chap. 119, Laws of 1861, its board of education might elect to exempt it from the supervision of such officer for one year, yet such exemption lasted only one year, and if not renewed each succeeding year, the city would be as much subject to the supervision of the county superintendent as any other part of his district. This seems sufficient to refute any presumed intention on part of the legislature to disqualify the residents of a city exercising such option, from holding the office, notwithstanding they are expressly disqualified from voting for such officer during any year when the city had been exempted from his supervision. For the term of office is two years, and it is as reasonable to assume that the legislature did not intend to disqualify a resident of the city from holding the office inasmuch as he might be a qualified elector during the second year, as it is to assume that they did not intend to disqualify him for the reason that he was not a qualified elector during the first year. The statute does not provide expressly that such resident should be ineligible; and as the exemption of the city from the jurisdiction of the county superintendent, depends upon a contingency, and is only partial in its charac ter, such ineligibility cannot be implied. It follows that the relator was entitled to hold the office if he received a majority of the votes.

The only remaining question is, whether the court below properly found that the 128 votes cast for the relator for the office of " superintendent of schools," were intended to be cast for him for the office of county superintendent of schools. Of this, upon the facts admitted and found, there can be no

doubt. It is true, another person was voted for on the same ballots for an office described in the same manner, that is, for " superintendent of schools." And if the court was bound to shut its eyes to everything except the ballot, it would be void for uncertainty. But it is well settled that ballots, like other writings, are to be construed in the light of the surrounding facts, in view of which the elector uses the language upon his vote, *Carpenter vs. Ely*, 4 Wis., 429. And when it is made apparent that Winslow, the other person voted for upon these ballots for " superintendent of school," was a resident of Racine county, and therefore ineligible to the office of county superintendent in Dodge county, but was a candidate for the office of state superintendent, the intention of the voter to designate him for the latter office becomes unmistakable, and this intention, being arrived at, removes all uncertainty, and leaves the intention to vote for the relator for county superintendent of schools, for which office he was a well known candidate, equally clear, and this is nothing more than an application of the doctrine, that where a description in a written instrument is equally applicable to *two or more things, parol evidence is admissible to show which was intended*, and it is seldom, when an uncertainty thus arises, that the surrounding facts so completely remove it, and reveal the intention so clearly, as was done by the evidence in this case.

The judgment is affirmed, with costs.