THE STATE OF FLORIDA EX REL. MARCUS L. SMITH, PLAINTIFF, VS. JAMES E. ANDERSON, DEFENDANT.

1. The power to issue writs of *quo warranto* given to the Supreme Court by the fifth section of the Judiciary Article of the Constitution of 1885, embraces information in the nature of *quo warranto*.

2. The provisions of the statute of February 2d, 1872, McClellan's Digest, p. 846, which authorizes any person claiming title to any office exercised by another, to file an information in the name of the State against the person exercising the same, and to set up therein his own claim, upon the refusal of the Attorney-General to do so, is constitutional.

3. An allegation, in an information, that a specified town "is a municipal corporation, duly incorporated under the laws of the State of Florida, and pursuant to the statutes of the State of Florida in that behalf, and was such municipal corporation" on a particular day designated, is a sufficient allegation of the incorporation of the town under the general law for the incorporation of cities and towns, there being no special statute incorporating the town referred to.

4. The provision of the general Municipal Corporation Law, section 15, p. 248, McClellan's Digest, that the "City or Town Council shall have the power and authority to judge of the election returns and qualifications of its own members," does not of itself vest the Council with exclusive jurisdiction to try the right of a person to the office of Councilman or Alderman, and thereby deprive the courts of power to try the same in a proceeding by information in the nature of a *quo warranto*.

State ex rel M. L. Smith v. J. E. Anderson—Syllabus.

5. A municipal ordinance enacted under the general Municipal Corporation Statute becomes "a law" under section 11, p. 247, McClellan's Digest, on receiving the approval of the Mayor. The requirement that all municipal "laws and ordinances" shall be promulgated without unnecessary delay by posting or publishing for a period of not less than four weeks, does not postpone their operation till after such promulgation.

6. Where a statute authorizes the election of a stated number of "aldermen who shall be known as the city council," and that two-thirds of "the council may expel a member of the same," and an ordinance regulating municipal elections uses the word "councilmen," instead of "aldermen," the meaning of the ordinance is the same as if the latter word had been used.

7. The lawful intention of voters as shown by their ballots should be given effect by the courts, and where a statute authorizes the election of a stated number of "aldermen, who shall be known as the city council," and that two-thirds of "the council may expel a member of the same," and an ordinance regulating municipal elections uses the word "councilmen" instead of "aldermen," and there were votes for "councilmen," such votes were not on this account illegal, but should be counted.

8. The 25th and 26th sections of the Election Law, approved June 4th, 1889, Chapter 3879 of the Statutes, pp. 101, 102, do not prescribe the form and contents of ballots in the elections for officers of cities and towns.

9. The material guarantee of the provision of the Constitution, Section 6, Art. VI, that "all elections by the people shall be by ballot," is inviolable secrecy as to the person for whom an elector shall vote, and this guaranty is binding upon municipal governments in the regulation of elections.

10. A municipal ordinance provided that there should be distinct and separate ballot boxes to receive the ballots for the several officers to be voted for, and that boxes should be marked in plain Roman type or in plain hand-writing, designating the office for which the ballot is intended, and that the ballot should be of plain white paper and not more than a specified length and width, and contain nothing but the name of the officer or officers to be voted for, and ballots were cast pursu-

16

ant to such ordinance, they containing only the name of the person intended to be voted for and being placed in the box bearing the name of the office for which the electors intended to vote for such person; and the information alleged that the ordinance was enforced up to the closing of the polls, and that there was a box plainly marked to receive the ballots for the office in question, and that this was understood on the day of election by the inspectors and by all persons then and there legally qualified to participate in the election; that the inspectors refused to count the ballots cast pursuant to such ordinance, for the reason that they did not have on them the name of the office voted for, and that counting them, as they should be, the relator was elected. *Held*, upon demurrer to the information that the ballots cast in accordance with such ordinance, and under the circumstances detailed in the information, should have been counted.

11. An affidavit by a relator stating that he knows the contents of the information, and that it is true, except as to matters alleged on information and belief, and that as to those matters he believes them to be true, is entirely positive, there being in the information no allegation made upon information and belief.

12. Assuming that security for the payment of costs is necessary in a proceeding by information in the nature of a *quo warranto*, instituted under section 2, p. 846, McClellan's Digest, in the name of the State by a person claiming an office, a deposit made with the Clerk of this court under Supreme Court Rule 21, is a sufficient character of security.

13. An order, made on motion of relator's attorney, dismissing an information in the nature of a *quo warranto* without prejudice to further action in another proceeding and giving leave to withdraw the information, is in effect an order of nonsuit on motion of relator's attorney, and not a final judgment on the merits of the cause.

14. A judgment of nonsuit entered in a cause in one court is not a bar to a subsequent action on the same claim in another court.

15. Where a judgment of one court is pleaded as a bar to a subsequent action on the same cause in another court, what the real nature of the judgment of the former court is, must be ascertained from its record.

16. A plea by respondent in *quo warranto* of a prior adjudication adverse to relator, by a town council, but not showing that the relator was a party to the proceeding before the council, is demurrable. An allegation that relator was present when the council took action and did not protest, object or dissent, from the action or decision of the council, does not show that he was a party to the proceedings.

17. The plea of the respondent in *quo warranto* involving the right to office under an election, must set up facts showing that he was elected; denials that the relator received the number of votes alleged in the information, or that the relator received a majority of the votes cast at the election, or that he received a majority of the legal votes, and a plea that the defendant is not guilty, or that he does not usurp the office, are insufficient in law. He must show his title to the office, and this rule is applicable as well where the information is filed in the name of the State under section 2, p. 846, McClellan's Digest, by the person claiming the office, upon the refusal of the Attorney-General to act, as in any other case.

Judgment of ouster against the respondent, and that the relator is entitled to the office.

This is a case of original jurisdiction.

STATEMENT.

The following parts of the information, with the statements in the opinion, are sufficient for a full understanding of the decision.

That at the election one hundred and sixty-five votes were cast for the office of alderman, and three aldermen were to be elected, and the relator, George H. Count, James H. L. Slayton, James E. Anderson, William E. Ballough and Robert Anderson were candidates for the offices of aldermen, and Smith, Slayton and Count each received a majority of the votes for the same, the number of votes cast for aldermen being as follows: For Marcus L. Smith and J. H. L. Slayton each 103, or more, George H. Count 109,

or more, while James E. Anderson and Robert Anderson each received only 67 votes, or less, and William ˙E. Ballough only 60 votes or less.

, That there were put into the said box for the offices of aldermen one hundred and three or more ballots of plain white paper not more than two and one-half inches wide, and not exceeding six inches in length, and not containing anything upon them but the names of Marcus L. Smith, George H. Count and J. H. L. Slayton, and the Chairman of the Board of Inspectors was then and there carrying out the provisions of the ordinance of July 22, 1889, and the majority of the voters then and there voting did vote for and elect the relator to the office of alderman of the town of Daytona.　　.

That the majority of voters then and there voting had two sets of ballots—one of plain white paper, clear and even cut, without ornament, designation, mutilation, symbol or mark of any kind whatever except the names of the persons voted for and the offices to which they were intended to be chosen, which names of persons and offices were printed in black ink, but this ballot could not on account of the regulations of the Board of Inspectors be cast, there being no single ballot box provided for the reception of this kind of ballots, but the seven ballot box plan was enforced and the electors accepted the same and voted accordingly.

That at the above election no other persons than the six above named "ran for aldermen," and that neither the relator, nor other person of his name ran for any other office than that of alderman, and it was understood and acted on by the electors then and there voting, and all the votes cast for Marcus L. Smith should have been counted for him for alderman.

That the Inspectors and Clerk, naming them, proceeded

to count the ballots and announce the result of the election, but wrongfully rejected and refused to count one hundred and three votes, or more, cast for relator for the office of alderman in accordance with the above ordinance, and containing nothing but the names Marcus L. Smith, George H. Count and James H. L. Slayton, the Board rejecting and refusing to count these ballots because they did not have printed on them the name of the office voted for. That had these ballots been duly canvassed, the returns of the Board would have shown that relator was duly elected to the office of alderman of the town.

That W. J. Berne and James M. Osborne, two of the Inspectors, and C. M. Bingham, Jr., the Clerk, declared and certified to the Town Council of Daytona, that for Councilmen, Robert Anderson received sixty-seven votes, William E. Ballough sixty votes, James E. Anderson sixty-seven votes, and George H. Count received six votes, and the relator one vote, which certificate is alleged to be false and fraudulent. That the other Inspector, George F. Smith, refused to join in this certificate on account of its falsity and the fraud, and attempted to count and preserve the ballots cast for the office of alderman, but the ballots were taken from him by Berne, who was also a candidate for the office of Assessor, and Berne and Osborne fraudulently refused to count or make a record of the ballots cast for relator, and prevented Smith from preserving the ballots for future investigation, inspection and review.

That the report of the Board of Inspectors of the election was received by the Town Council of Daytona and accepted by them, and defendant, James E. Anderson, appeared at the time the report was made and entered upon the duties of the office of alderman, and has since acted as, and now pretends to be such alderman, and usurps the office, but

Ballough and Robert Anderson refused, on account of the false and fraudulent character of the certificate, to exercise any of the functions of the office, and still refuse to do so, and relator claims title to the office of alderman by virtue of having received a majority of the votes cast and of his eligibility to the office.

That the Attorney-General of the State, William B. Lamar, has refused to institute proceedings in the name of the State upon the relation of the claimant, or to file a complaint setting forth his.name as the person rightfully entitled to the office, as will further appear by an attached exhibit.

The other facts are stated in the opinion.

*Hamlin & Stewart* for Relator.

*H. H. Buckman* for Respondent.

The nature of this proceeding is purely a common law remedy. Both the ancient writ and the information succeeding it in practice—a high prerogative writ in either case—being issued solely at the instance of the Crown and by the Crown officer—a civil remedy quasi criminal in form—to enquire into the title of all franchises.

> High, 602, 5 vol., Field, 153.
> 9 Anne, ch. 20, passed 1711.
> Bacon's Abr., vol. 3, page 643, *et seq.*

The remedy was extended—provided it be had by leave of court, brought in the name of the Crown, and by its public officer—to include relations of private persons ignored by usurpation of any public officer.

This State will follow common law practice.

> 12 Fla., 212.

Even where there is statute privileges governed by common law.

5 vol. Field, 155

#### CROWN OR PEOPLE.

In England the right is in the Crown. In this country the right is in the people. High, 624.

#### PUBLIC OFFICE.

Can only be brought for usurpation of public office.

3 Term Reports, 599.    2 East, 308.
4 Term Reports, 381.    4 East, 337.
5 Term Reports, 85.
Robinson vs. Jones, 14 Fla., 256, decided 1873.

#### PUBLIC PROSECUTOR.

Must be brought in the name of the Crown or people by the public prosecutor of the Crown. In this country, by the Attorney-General of the State.

Stat. of Anne, *Ibid.* Bacon's Abr.
High, 59, 697 and note 1 and note 2: Field, vol. 5, 153.

#### WHEN SUSTAINED.

Unless otherwise provided by statute, the information can only be sustained in like cases when original writ could have been brought at common law. High, 600; State vs. Ashley, 1 Ark., 279.

#### FLORIDA STATUTES.

Our statute does not enlarge causes of action and remedies as above, at common law. McClellan, page 846.

### SURETY FOR COSTS.

On private relation, surety must be given.

> Act 4 and 5, W. & M., Cap. 18. Bac. Abr., vol. 3, p. 641.
> McClellan's Digest, page 846. High, 603.
> Statute strictly construed. High, 662, new edition.
> Must show corporate existence clearly. 662.

### AFFIDAVIT.

Must be positive. Information and belief not sufficient.

> 3 Term Reports, 316.

### DISCRETION.

Filing of information addressed to sound discretion of court.

> 17 Florida ; 22 Florida.
> High, page 472, 628.

Motives inquired into. 1 East, 38. 1 Term Reports, 1.

### PEOPLE—INDIVIDUAL.

Last considered very strictly. High, 682, 683.

> 4 Vr., (N. J.) 195. 2 Barn. & Auld, 479.

### MUST BE THE ONLY REMEDY.

Where there is any other remedy, there is no jurisdiction in the courts—as if the law provide any other body to determine the same.

> High, 617-642; Note 1.
> 22 Mich., 496. 12 Fla., 686. 1 Am. St. Rep'ts, 498.
> 60 Mich., 200. 30 Des. 49. 55 Texas, 545. 80 N. Y., 117.

### MUST SHOW TITLE AND USURPATION.

See Information. Statute says Aldermen. Shows no election of such. No return of such, no ballot for such.

Acquiescence in irregularities a bar.

> High, 499, 646, and note 2, 686, 687, 709.
> 3 Term Reports, 301.   70, Ill., 25.   73 Ill., 132.
> 4 Vr., N. J., 195.

### ORDINANCES.

Must be passed by proper authority, recorded and promulgated, as statute or charter provides, to be valid.

> 4 Field, 650.   52 N. Y., 526.   60 N. Y., 16–342.
> 38 N. J., Law 110.   11 Fla., 130.

Must be subordinate to general laws of State.

> Field, vol. 4, 652–667.   30 Miss., 316.

Charter and laws must be followed as to time and manner and mode of election.   Dillon, 146, last.

### SUPREME COURT NO POWER.

> 12 Fla., 212.   Constitution 1885.   High, 616.

Private Relation. State not a party. Relief in lower court.   Council has power.   See especially 1 Ark., 279.

### OFFICE MUST BE LEGALLY AUTHORIZED OFFICE.

Councilman not so.   High, page 493.   42 Conn., 79.

We respectfully desire to contend that this is a civil action, criminal in form, by one private person against another. One in which the State is no party and has no interest. That such an action loses its high prerogative character and cannot be maintained in this court, whose jurisdiction is appellate

merely, except in such cases where the State, by its public prosecuting officer, desires to exercise its exclusive prerogative.

If, under our statute, a private individual may institute *quo warranto* or information in such nature at all—which we doubt— it can only apply to the lower courts, given jurisdiction by the Constitution, from whose decision the defeated party is by the Constitution entitled to the right of appeal to this court, provided (we desire further to contend) the office is of some pecuniary value. The statute, if operative at all, designed to give only a civil remedy, if a wrong remediable and damages had been committed. It did not create a new remedy, nor a new right. No person can have a remedy unless injured by a trespass on his rights of personal security, personal liberty and private property. This action falls within neither. A private person can have no right in an office unless through its emoluments. It is not personal property. Neither is it a hereditament, corporeal or incorporeal. Neither debt, covenant or assumpsit will lie, nor any of the other forms of action, for its recovery. And no action will lie that does not sound in damages, except the old action of debt.

The basis of all actions is that a recovery of value whose basis is made money, can be had. An office cannot and does not fall under the head except where it is a salaried or feed office, and then the action is not for the office but for the fees. The proceedings in the *quo warranto* were by the Crown only. Its high prerogative was not possible to be questioned. It was the inquiry by the source of all power, and without the action of the State or Crown by its public officer, such a proceeding cannot be had. The statute does not create this remedy, and cannot. It does not enlarge it, and cannot transfer to the subject the power of

the Sovereign. It was for this reason the statute of Anne was passed, so that redress might be had by a private relation, provided the State by its officer saw proper to extend its prerogative in his behalf, and this is only, and should only be done, in cases where the office alleged to be usurped is one of general public interest to the State. It was never intended to extend this high prerogative remedy to adjust petty and private grievances.

If the office is of no pecuniary value, of no general public interest, there is no remedy, the presumption being that our public institutions determine such petty right at the ballot box.

If the office be. of pecuniary value, then an action by the aggrieved individual may be had for money had and received. 2 East, 312, last of opinion. And where any other remedy is to be had no *quo warranto* can issue.

But in any event, whether this proceeding may be had on the private relation of the relator, it cannot be had in this court.

RANEY, C. J.: The defendant has moved to quash the "information and proceedings" herein on twenty-six grounds. We shall give our views on such of them as seem to merit any notice.

I. This court decided in 1868, in the case of State *ex rel.* vs. Gleason, 12 Fla., 190, that the grant of power to issue a writ of *quo warranto* embraces and includes the proceeding by information in the nature of a *quo warranto*, the latter being civil in its *essential* incidents, and having in view the same object. There is nothing in our jurisdiction as defined by the presest Constitution that renders the above decision inapplicable or without controlling authority now; nor does the case of State vs. Christie *et als.*, 1 Ark., 279,

convince us that there is error in the conclusion reached in the Gleason case, 33 Mo., 97; 38 Mo., 535; 32 Mo., 379; State vs. West W. R. Co., 34 Wis., 197. We are satisfied of our jurisdiction to entertain proceedings upon informations in the nature of a *quo warranto*, and it should be regarded as long since settled in this State, both by authority and by a uniform and frequently recurring practice, as the decisions and records of this court manifest.

II.    The second section of the act of February 2, 1872, McClellan's Digest, 846, provides that any person claiming title to an office which is exercised by another, shall have the right, upon refusal by the Attorney-General, to institute proceedings in the name of the State upon such claimant's relation or upon the Attorney-General's refusal to file a complaint setting forth his name as the person rightfully entitled to the office, to file an information or institute an action in the name of the State against the person exercising the office, setting up his own claim. The court is authorized to determine the right of the claimant to the office if he so desires, but no one is to be adjudged to be entitled to an office except upon full proof.

In this case, the Attorney-General has, as is shown by a letter from him in the record before us, made the refusal contemplated by the statute, and the relator, through counsel, presented an information and moved for leave to file the same, and leave was granted and order for process made.

It is urged that the act is unconstitutional because, or in so far as it permits the institution of the proceeding by the claimant without the intervention of the Attorney-General.

The information in the nature of a *quo warranto* had, even prior to the statute of Anne, (Chapter 20, 9th year of Anne, A. D. 1711), practically superseded the old and less convenient writ of *quo warranto*. The old writ was a civil rem-

edy, and though the information was criminal in form, it in time came to be regarded and has long since been considered as essentially a civil remedy, resorted to for the purposes of testing a civil right by trying the title to an office or franchise and ousting the wrongful possessor thereof. High, Ex. Rem., Sections 591, 600, 602, 603. The statute of Anne provided that if any person or persons should usurp the offices and franchises of mayors, bailiffs, port-reeves and other offices, within certain cities, towns corporate, boroughs and places, * * * it should be lawful for the proper officer in each of the courts, with the leave of the court, to exhibit an information or informations in the nature of a *quo warranto*, at the relation of any person or persons desiring to sue or prosecute the same, who shall be mentioned in such information or informations as the relator or relators against the alleged usurper.

Without passing upon the questions whether the information can be filed by the Attorney-General, independently of the discretion of the court when he acts on the relation of a private person, as it certainly can be when he acts on his own relation or *ex officio* in behalf of the public, or whether leave to file an information could heretofore be moved for by a private relator, without the intervention of the Attorney-General, in the case of a *municipal office* like this, we can see nothing in the objection made that is fatal to the above provision of the act of 1872. The power of the Attorney-General to file an information if he sees fit to do so, is not taken away; the judgment is not binding on the State, Section 3, p. 847, McClellan's Digest; nor is the purpose of the proceeding changed, but the practice or mode of reaching the result of determining who is entitled to the office has simply been modified, and no constitutional rights of a defendant in such proceeding are in any wise impaired

by the modification; and the jurisdiction of the court is not extended to any purpose not included in the constitutional grant. High on Ex. Rem., 681; Rex vs. Wardroper, 4 Burrow, 1964; People vs. Railroad Co., 30 Am. Dec., 33 and notes; State vs. Vail, 53 Mo., 97, Commonwealth vs. Chuley, 56 Pa. St., 270.

III. The Town of Daytona, must, upon the pleadings, in the absence of a special charter act, be regarded as incorporated under the general law regulating the incorporation of cities and towns. If there was a special or private law constituting its charter we would, under Section 120, page 838, McClellan's Digest, doubtless, take judicial notice of it without its being specially pleaded. The information alleges that the town "is a municipal corporation duly incorporated under the laws of the State of Florida, and pursuant to the statutes of the State of Florida in that behalf, and was such municipal corporation" on a particular day specified. This is a sufficient allegation of incorporation under the general corporation law; and in so holding we do not antagonize the decision in People vs. DeMill, 15 Mich., 164.

The general municipal corporation law, Section 15, page 248, McClellan's Digest, provides that the "city or town council shall have power and authority to judge of the election returns and qualifications of its own members," and it is urged that this grant deprives the courts of jurisdiction to inquire into the right or title of an alderman or member of the town council to his office. The better authority, as we think, and it seems, the weight of it, is against the proposition that the above grant to the council ousts, of itself, the jurisdiction of this court to inquire, upon informations in the nature of *quo warranto*, into the defendant's title. High on Ex. Rems., Section ——; 1 Dillon on Municipal Corporations, Sections 202, 203 and notes; McCrary

on Elections, Section 345; State *ex rel.* vs. Kemp, 69 Wis., 470; S. C. 2 Am. St. Rep., 753; People *ex rel.* Hatzell vs. Hall, 80 N. Y., 117; Commonwealth vs. Allen, 70 Penn. St., 465; Kendall vs. Camden, 47 N. J. (Law), 117; State *ex rel.* vs. Fitzgerald, 44 Mo , 425; Ex-Parte Heath, 3 Hill, 42, and other cases cited in these authorities. It is not necessary or proper upon the pleadings before us to say anything as to what grants to a council will be. regarded as excluding the jurisdiction of the courts, or what will be the effect upon the authority or duty of the courts to act if proceedings involving a contest between opposing claimants, and to which they are parties, are either pending before the council at the time the power of the court is invoked or have previously reached a decision upon the merits of the controversy.

IV.   The legality of the election is assailed on grounds which rest upon the town ordinance passed and approved July 22, 1889, which ordinance, under the express provisions of the general municipal corporation act, Section 11, p. 247, McClellan's Digest, became "a law" on receiving the approval of the Mayor. The subsequent section (41, page 254) making it the Council's duty to promulgate "without unnecessary delay all laws and ordinances which they may enact, by posting or publishing. for a period of not less. than four weeks," as therein directed, does not postpone the operation of the law till after such promulgation has been made.

The first of these alleged illegalities is the fact that the ordinance provides for the election of "councilmen," whereas the statute authorizes the election of "aldermen." Sec. 4, p. 246. The language of the statute is: There shall be chosen * * * "aldermen who shall be known as the city council." In another section of the statute, Section 15, page 248, it is enacted that two-thirds of the "council may expel a mem-

ber of the same" for specified causes. According to allegations of the information which are admitted, the various persons voted for, for members of the council, were in fact voted for as "aldermen," and not as "councilmen," but assuming that they were voted for as "councilmen," which the return of the inspectors report the fact to be, as to all votes counted by them, we see nothing in the mistake as to the title of the officer that is of any practical consequence in so far as the validity of the election is concerned. The terms councilmen and aldermen, when used in an ordinance, as in this case, can mean under the statute but one and the same thing, and both reason and authority are against such an error having the effect to defeat an election. It is altogether unreasonable to suppose that an elector voting for persons for "councilmen," at an election under this statute and ordinance, understood or intended anything else than that he was voting for an alderman or member of the town council. In People *ex rel.* Akin *et al.* vs. Matteson *et al.*, 17 Ill., 167, the statute provided for the election of "Police Magistrates," and was enacted under a provision of the constitution authorizing the legislature to provide for the election of "Justices of the Peace." The municipal ordinance under which the election was held used the statutory designation: Police Magistrates. At the election nearly all the votes were cast for "Police Justices," and a few for "Magistrates," and a few for "Police Magistrates of the City of Chicago," and it was held that the terms "Police Justices" and "Police Magistrates" were equally within the meaning of the constitution and the intention of the statute; and that the votes given under either designation should be counted. The principle of this decision is that controlling in all election cases, and is that the intention of the voters as shown by their ballots should be given effect by the courts and

must control.   It was well said in that case that the court
was called upon to determine from the evidence the simple
fact of the intention of the voters ; and that no rational mind
could doubt upon the question of fact of their intention to
vote for the relators to fill the offices for which the election ₹
was ordered, and that this was so palpable that its discus-
sion would not be attempted ; and we may say the same as
to the intention of the electors of Daytona when voting for
relator and others as "councilmen" to vote for them as "al-
dermen," and the meaning of the ordinance in the use of
the former term.   Our conclusion is, that the ballots should,
notwithstanding this objection, have been counted ·by the
inspectors, and that the use of the word "councilmen" did
not affect the validity of the ordinance or the election.   See
also Dillon on Municipal Corporations, Section 198 ; Hawes
*et al.* vs. Miller, 56 Iowa, 395 ; State vs. Cavers, 22 Ib., 343;
Catlett vs. Lowry *et al.*, 45 Ib., 478; Carpenter vs. Ely, 4 Wis.,
420; People vs. McManus, 34 Barb., 620; State *ex rel.* Spaul-
ding vs. Elwood, 12 Wis., 551; Detroit, Eel River & Illi-
nois R. R. Co. vs. Bearss, 39 Ind., 598; State *ex rel.* Phelps
vs. Goldthwaite, 16 Wis., 146.

The other objections may be explained thus :   The ordi-
nance provides that there shall be distinct and separate
ballot boxes to receive the ballots for the following "officers :
Mayor, Councilmen, Assessor, Collector, Treasurer, Clerk,
Marshal, and in case of a special election one box for each
question, and that all ballot boxes shall be marked in plain
Roman type or in plain handwriting, designating the office
for which the ballot is intended ; and the ballots shall be of
plain white paper and not more than a specified length and
width, and shall contain nothing but the names of the offi-
cer or officers to be voted for."

The information alleges that this ordinance was enforced

up to the time of closing the polls at the election ; that there were seven ballot boxes to receive the ballots for the respective offices, and among the others one to receive those for the offices of " aldermen," and that the same were marked in plain handwriting designating the office for which the ballots were intended, and one was so marked designating it as intended to receive the ballots for the office of "aldermen," and that it was understood on the day of the election by the Inspectors and by all persons then and there legally qualified to participate in the election that this was intended.    That there were put in the box prepared for the offices of aldermen one hundred and three or more ballots corresponding to the description specified by the ordinance and containing nothing but the names of the relator and George H. Count and James H. L. Slayton, who, with the three opposing candidates mentioned in the statement of the case, were the candidates for the offices of aldermen, there being three aldermen to be elected, and that the Inspectors refused to canvass these ballots because they did not also have on them the name of the office voted for.    The allegations of the information showing that the relator received a majority of votes over the defendant, assuming the rejected ballots to be legal, as well as other averments to be found in the statement of the case need not be repeated here.

The general election law of June 4, 1889, Chapter 3879, of statutes, requires that ballots used at elections for specified State and county officers, Members of the Legislature, Representatives in Congress and Presidential Electors, shall be of plain white paper and of dimensions which are the same as those specified in the above town ordinance, and contain both the name of " the person or persons voted for as such officers and the office for which they are voted," and also provides for a separate ballot box for each office, the

box to be " labelled in plain and distinct Roman letters or in a plainly written handwriting, with the office or officers therein to be voted for."   Sections 25 and 26.

It is contended that the absence of the office from the ballots alleged to have been rejected by the Inspectors in canvassing the vote, rendered them illegal.   This act does not, nor does any other, provide that the ballot in smunicipal elections shall be of the same form and contents as those prescribed by it for State and county elections.   The Constitution provides, Section 6, Article VI, that in all elections by the people the vote shall be by ballot, and in those by the Legislature it shall be *viva voce*.   The material guarantee of this constitutional mandate of vote by ballot is inviolable .secresy as to the person for whom an elector shall vote.   The distinguishing theory of the ballot system is that every voter shall be permitted to vote for whom he pleases, and that no one else shall be in a position to know for whom he has voted, or shall know unless the voter shall of his own free will inform him.   Cooley's Constitutional Limitations, m. p. 604, *et seq*.   Whereas we are satisfied that the above constitutional guaranty that all elections by the people shall be by ballot is binding upon municipal governments and controls in popular municipal elections, we are also confident, in the absence of any express provision of law requiring the same form of ballot to be used in municipal elections as is prescribed by the act of 1889 for the elections which the act regulates, that the ballots cast in accordance with the town ordinance of Daytona and under the circumstances detailed in the information and admitted by the defendant's motion, were not nullities, and should not have been rejected.   The above regulation of that ordinance did not of *itself* violate the constitutional principle of secresy nor deprive the electors of the free exercise of their

franchise, nor did it contravene the statute, as the latter does not regulate municipal elections. Understanding, as the electors did, the regulations, and putting their ballots in the box designated, as it was, as the proper and authorized receptacle of votes for " aldermen," or " councilmen "— it matters not which—the ballots so lodged in the box became identified with it and the designation of the box became to all intents and purposes a part of the ballot, and with it distinct evidence of the voter's will as to the person voted for and the office, without the necessity of resorting to parol or other testimony to ascertain his intention; and clearly under this ordinance the ballots found in that box were to be as conclusively regarded by the Inspectors as cast for councilmen or aldermen as if the designation or title of the office had been fully expressed upon their face. There was, under the facts set up in the information, no excuse or justification for their rejection by the Inspectors, and in rejecting them, those officers defeated the will of the majority of the electors of Daytona, if the facts stated in this information be true, as they must be conclusively assumed to be on this motion. The cardinal rule is to give effect to the intention of the voter whenever it is not left in uncertainty, and there being no such uncertainty, we find the facts before us no basis for justifying a rejection of these ballots.

V. The affidavit to the information states that the relator knows the contents of the information, and that it is true except as to matters alleged therein on information and belief, and that as to those matters he believes them to be true. There are no allegations upon information and belief, and the affidavit is consequently altogether positive.

A deposit to cover costs has been made with the Clerk in this case, and assuming that any security for the payment

of costs can be required where proceedings are instituted as here, under the provisions of Section 2 of the act of February 2, 1872, p. 346, McClellan's Digest, we think the deposit is a sufficient character of security.

If the filing of an information under this section by a private relator is addressed to the sound discretion of the court, we, to say the least, do not think the facts stated in this information, and, thus far, admitted by the defendant, show an improper exercise of discretion,

The motion is denied, with leave to defendant to answer by Friday, the 13th instant, at 10 o'clock, a. m.

RANEY, C. J. The respondent has, since the order denying the motion to quash, filed pleas to the information, and relator has demurred to them as insufficient in law.

The first plea is a former judgment against relator in the same matter between the same parties in the Circuit Court of the Seventh Judicial Circuit. These proceedings are as follows: An information filed September 26, 1889; motion to quash the same made October 21st, and order denying motion October 28th; demurrer to information on same day and order made November 13th sustaining demurrer and allowing relator to amend, which amendment was filed on the 16th day of the same month, and demurred to by defendant on the 19th thereof. This demurrer was overruled on December 17th, and relator allowed till January Rule day, 1890, to amend the information. On the sixth day of this month, which was the rule day, defendant moved for judgment on account of failure of relator to amend, and on same day relator filed an amendment, which, on the same day, the defendent moved should be "stricken out" on stated grounds, and "for judgment on defendant's demurrer;" and on the 18th day of February the following order was

made: "Upon argument this day the above motion is granted, except in so far as judgment on demurrer at this time, and relator is allowed on request until the rule day in March, A. D. 1890, to amend." On the first day of April, 1890, the following order was made : "On motion of relator's attorneys this cause is dismissed without prejudice to further action in another proceeding, and leave is given to withdraw the information."

It is apparent from the above statement that no final judgment on any of the demurrers, (Gates vs. Hayner, 22 Fla., 325,) or other final judgment on the merits of the case was rendered by the Circuit Court. There were, it is true, rulings on demurrers, but up to the dismissal of the case these rulings remained in the breast of the court, and were interlocutory, and the dismissal is no more nor less than an order of non-suit made on motion of the plaintiff, before any final judgment had been entered. The correctness of this order cannot be reviewed in this proceeding. We must look to the record of the Circuit Court, as presented here, to ascertain the nature of its judgment, and from it we discover that there has been no final judgment on the merits of the cause, but in effect nothing but a non-suit, or discontinuance of the action, leaving the relator at liberty to sue again for the same cause. The above conclusions are sustained by the following authorities: Freeman on Judgments,. Sec. 251; Baugh vs. Baugh, 4 Bibb, 556; Well's *Res Adjudicata* and *Stare Decisis*, Sec. 14; Herman on Estoppel, Sec. 99 ;Audubon vs. Excelsior Insurance Co.—27 N. Y., 216; Haws vs. Tierman, 53 Penn. St., 192; Haldeman vs. U. S., 91 U. S., 584; Homer vs. Brown, 16 Howard, 354.

We do not mean to say that there may not be a final judgment upon the merits entered upon demurrer to a complaint, or that when there has been such an entry in proper form, it

will not operate as a bar to a subsequent action on a substantially similar complaint, (Freeman on Judgments, Sec. 267,) but the fact is that in the case before us no such final judgment upon the merits is shown to have been entered by the Circuit Court; and there is nothing in any of the authorities cited by counsel for defendant that conflicts with the conclusion we have reached in this case. It is not necessary to review them. Cases like that of Elwell vs. McQueen, 10 Johnson, 520, in which it was held that a justice of the peace had under the circumstances no power to enter a non-suit, and his judgment, in form one of *non-suit*, was treated as a final judgment on the merits, he having heard the proofs, have no application to a court like the Circuit Court of this State. Freeman on Judgments, Sec. 251.

Another plea is one of prior adjudication by the Town Council of Daytona, under Section 15, p. 248, McClellan's Digest, giving it power to judge of the election returns and qualifications of its own members. Waiving the question of the effect of an investigation into the real merits of the question who received a majority of the legal votes actually cast at the polls, and a decision thereon by a town council under this statute, as a bar to a subsequent proceeding by *quo warranto* when both claimants have been parties to such a contest before the council, we are satisfied that the plea does not show that the relator was a party to the proceedings in this case. The mere allegation that he was present when the council took action, and did not protest, object or dissent from the action or decision of the council, is not sufficient to show that he was a party to the proceeding.

There is another plea, the purpose of which is evidently to show that defendant received a majority of the legal votes, but it is entirely insufficient. We have decided that

the ballots cast in accordance with the ordinance were legal, and it is not necessary to say anything more on this subject. A denial "that any such number as one hundred and three" of these ballots, or pieces of white paper, as the answer calls them, were cast as alleged for relator, is not a denial that relator received more legal votes than defendant did, nor an allegation that he did not receive one hundred and two or any other number in excess of the sixty-seven votes which defendant alleges he received. It is a negative pregnant which is condemned by all works on pleading. Gould's Pleading, Chapter 6, Section 29, *et seq.* Denials that the relator received a majority of the votes cast at the election, and allegations that the defendant was duly and legally elected, or that he received a majority of the legal votes, are mere conclusions of law. Facts must be averred showing that he was elected in the manner prescribed by law. State *ex rel.* vs. Day, 14 Fla., 9. The pleadings before us show that the relator received a majority of the legal votes cast at the election.

The remaining plea, in so far as its averments do not fall under what has been said above, is that the defendant is not guilty, and does not usurp the office in question. In State *ex rel.* vs. Saxon, 24 Fla., 342, where the information was filed by the Attorney-General on relation of a claimant of the office, it was held that the plea of *non usurpavit* was not a good plea. The rule in such cases is that the respondent is required to show his title to the office. High, on Extraordinary Legal Remedies, Sec. 712. Under the statute, McClellan's Digest, Sec. 2, p. 846, if the Attorney-General refuses to file a complaint setting forth the name of the person claiming an office, as the person rightfully entitled to it, such person may file an information or institute an action in the name of the State against the person exercising the

office, and set up his own claim. Although this act contemplates that the claimant shall in his information, filed in the name of the State, set up his own claim, we do not think it has changed the rule of the defendant's pleading to the extent, if at all, of making a plea of not guilty or *non usurpavit* admissible. It is still the duty of the defendant in possession of the office to set up the facts showing his election or appointment, and that he is qualified to hold it, or, in other words, his title to the office. The fact that relator may be found not entitled to the office will not authorize the defendant to hold it if he is not entitled to it. No person, says the same section of the statute, shall be adjudged entitled to hold an office except upon full proof of his title to it.

The pleas being each insufficient in law, the demurrer must be sustained.