COURTLAND BUCKMAN, APPELLANT, vs. THE STATE OF FLORIDA EX REL. CHAMPLIN H. SPENCER, APPELLEE.

1. The plea of *non usurpavit* is not a proper plea in a proceeding by information in the nature of a *quo warranto* on the relation of a private person upon the refusal of the Attorney-General to institute the suit.

2. The Circuit Courts of this State have jurisdiction to enquire by informations in the nature of a *quo warranto* into the legality of the election of a person to the office of mayor of a city or town organized under the general laws of this State for the incorporation of such municipalities, and the city or town council has no power by any action it may take in reference to such an election to deprive the courts of their jurisdiction over such matters.

3. The right of trial by jury on issues purely of fact arising in proceedings by information in the nature of *quo warranto* is guaranteed by the third section of the Bill of Rights of our Constitution, which provides that the right of trial by jury shall be secured to all and remain inviolate forever.

Appeal from the Circuit Court for Volusia county.

The facts of the case are stated in the opinion of the court.

*H. H. Buckman* for Appellant.

*Hamlin & Stewart* for Appellee.

MABRY, J.:

An information in the nature of a *quo warranto* was filed in the Circuit Court for Volusia county in the name of the State of Florida, on the relation of appellee, upon the refusal of the Attorney-General to institute the proceeding on such relation, for the purpose of testing the right of appellant to hold the office of mayor of the town of Daytona, in this State. The information alleges, among other things, in substance, that appellee and appellant were the only candidates for said office at a regular election of municipal officers for said town held on the 24th day of July, A. D. 1889, and that appellee was duly elected by a majority of the electors of said municipality as mayor, but that the judges and inspectors of said election, or a majority of them, fraudulently canvassed the votes cast and wrongfully declared appellant elected, and that he took the oath of office, and was then wrongfully exercising the franchises thereof.

The proceedings in the Circuit Court terminated in a judgment that appellant be ousted from the office of mayor of said town, and that appellee be inducted therein.

4

The pleadings in this case are similar in many respects to those in the case of the State *ex rel.* Smith vs. Anderson, 26 Fla., 240, 8 South. Rep., 1, both cases growing out of the same election. The respondent in the Circuit Court, appellant here, filed a motion to quash, and also demurred to the information, and both being overruled, pleas were filed, to which a demurrer was sustained. The pleas were amended, and upon the issues of fact made on them the trial was had that resulted in the judgment mentioned.

The first two errors assigned are the rulings of the court on the motion to quash, and the demurrer to the information. In reference to these assignments of error counsel for appellant says: "But as the court has virtually passed on the matter raised by them lately in a similar proceeding, these two grounds of error are therefore not now urged, except as such matters differ from the case referred to, and are hereafter specially set up." It is then urged, first, that the court erred in overruling the plea of *non usurpavit* which was filed by respondent. The contention under this head being that while such a plea would not be good as against the people, where the Attorney-General institutes the proceedings, the same rule does not obtain when a private individual comes in on his own relation upon the refusal of such officer to commence the suit. This point was settled in the case mentioned—State *ex rel.* vs. Anderson. Where the suit is instituted on the relation of a private individual, and a *prima facie* right to the office is shown, the respondent must show by what right he holds. The relator having shown a right to contest for the office, and to call upon the respondent to show by what authority, *quo warranto*, he exercises the functions thereof, and an issue being made up to try such right between the

parties, the fact that the relator may be found not en-
titled to the office, will not authorize the respondent to
hold it unless he is entitled to it.   Upon such an issue
the statute provides that no person shall be adjudged
entitled to hold the office then in question except upon
full proof of his title to it.   As decided in the case
referred to, the plea of *non usurpavit* by the respond-
ent is not proper, and the court did not err in overrul-
ing it.

It is further insisted under the assignments of error
mentioned that the court erred in overrruling respond-
ent's third original plea.   It is not necessary to set out
all the allegations of this plea, as the only objections
to it urged here may be clearly stated without such
recital.   The information alleges that the town of
Daytona was a municipal corporation duly incorpor-
ated under the laws of the State of Florida, and was such
corporation on the day of the election therein mentioned;
and that said election was ordered and held in pur-
suance of an ordinance duly passed by said municipal-
ity in May, 1884; and that the provisions of another or-
dinance passed by said town on the 22nd day of July,
1889, two days before said election was held, were en-
forced by the inspectors of the election up to the clos-
ing of the polls.   In the second plea to the informa-
tion it is alleged that the ordinance of the 22nd of
July, 1889, was inoperative at the date of the election
because it was passed two days prior thereto, and had
not been properly promulgated.   The third plea sets
out the provision of the ordinance passed in 1884, pre-
scribing that the inspectors of elections in said town
shall proceed substantially as the State laws shall di-
rect, and after reciting what was the State regulation
as to the ballot to be used at a general election, it is
further alleged that said election was held in pursu-

ance of the act under which said town was incorpor-
ated, the said ordinance passed in 1884, and the said
State regulation as to the ballot to be used.    Also that
on final canvass of the votes cast at said election by
the inspectors, respondent was found by them to be
duly and legally elected to the office of mayor of said
town, giving the votes cast for both parties, and upon
the completion of said canvass the inspectors duly cer-
tified the result of the election to the mayor of said
town, who, with the aldermen thereof, in regular ses-
sion assembled for that purpose, and in the presence of
relator, who made no protest or objection thereto, re-
ceived the returns of said election, and by resolution
adopted the same as the only valid result of said elec-
tion.    It is also alleged that the respondent then took
the oath of office as said mayor, and was lawfully exer-
cising the functions thereof.

It will be seen by an examination of the case already
referred to (State *ex rel.* vs. Anderson), that the valid-
ity of the ordinance passed on the 22nd day of July,
1889, so far as shown by the record, was passed upon
and held to be valid.    The ordinance took effect from
the date of its passage and approval.

The points argued by counsel under the third plea
are "that the matter was *res adjudicata*, having been
acted upon by the council, a body empowered by the
statute to judge of the qualifications and election re-
turns of its own members," and that the plea set up a
full defense to the relator's claims for the reason ac-
cording to the authorities cited on this point, that the
jurisdiction over such matters is vested exclusively in
the town council.    The fact that relator was present
when the return of the inspectors was received by the
council, and made no protest thereto, was not suffi-
cient to estop him from resorting to the courts for the

redress of such rights growing out of the election as he may have had. In reference to the grant of power by the general law incorporating cities and towns in this State to the council to judge of the election returns and qualifications of its own members having the effect to deprive the courts of jurisdiction over such matters, it is said in State *ex rel.* vs. Anderson that "the better authority, as we think, and it seems, the weight of it, is against the proposition that the above grant to the council ousts, of itself, the jurisdiction of this court to enquire, upon information in the nature of *quo warranto*, into the defendant's title." But we fail to find any grant at all to the council to judge of the election of the mayor, or to entertain any contest over the title to this office. It may be that the legislature can confer such exclusive authority on the town council to pass upon the election and qualifications of the mayor as to deprive the courts of jurisdiction over the same; but no such power had been conferred upon the town council of Daytona at the time of the election, and relator had a right to resort to the court to have his right to the office determined.

What is here said covers the objections urged to the rulings of the court on the pleadings, and we find no errors so far as the objections urged extend.

A demurrer was overruled to the amended pleas filed, and upon issues tendered thereon the defendant demanded a trial by jury. This was refused, and the court appointed a master to take testimony; upon the report of the master the court proceeded to adjudicate the cause. The defendant excepted to the rulings of the court denying the trial by jury, and also to the proceedings before the master, and they are assigned as error. The ruling of the court on the demurrer to the

54 SUPREME COURT.

Buckman v, The State of Florida ex rel. Spencer.—Opinion of Court.

amended pleas, it may be stated, is not before us for review, and we will not stop to discuss it, though we entertain some doubt about the legal sufficiency of the pleas on demurrer. Accepting the issues of fact, as was done by the court, tendered on the pleas, we proceed to consider the errors assigned.

These assignments of error present the question whether a defendant is entitled to a jury trial on questions of fact in a proceeding by information in the nature of a *quo warranto*. This right is claimed under the guarantee of the Constitution. The present Constitution provides that "the right of trial by jury shall be secured to all, and remain inviolate forever." The first Constitution, framed in 1838 for our State government, provided "that the right of trial by jury shall forever remain inviolate." These provisions, it is evident, were not designed to grant or create the right of trial by jury, but they were framed for the purpose of guaranteeing such a right already existing. It has been said that a Constitution is not the beginning of government, and is adopted in harmony with existing conditions of things. The following is the language of Judge Cooley, quoted by us in the case of English vs. State, 31 Fla., 340, 12 South. Rep., 689: "It is also a very reasonable rule that a State Constitution shall be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. By this we do not mean that the common law is to control the Constitution, or that the latter is to be warped and perverted in its meaning in order that no inroads, or as few as possible, may be made in the system of common law rules, but only that for definitions we are to draw from that great fountain, and that in judging what it means, we are to keep in mind that it is not

JUNE TERM, 1894. 55

Buckman v. The State of Florida ex rel. Spencer.—Opinion of Court.

the beginning of law for the State, but that it assumes
the existence of a well understood system which is still
to remain in force and be administered, but under such
limitations and restrictions as that instrument imposes.
Donald vs. State, 31 Fla., 255, 12 South. Rep., 695.
Judge Douglas said for this court in Flint River
Steam Boat Co. vs. Roberts, Allen & Co., 2 Fla., 102,
in speaking of the right of trial by jury that "it has
always been an object of deep interest and solicitude,
and every encroachment upon it has been watched
with great jealousy. 3 Story's Comm., 638, 639, sec.
1760. 'In *Magna Charta* it is more than once insisted
on, as the principal bulwark of our liberties, but es-
pecially in chap. 29, by which it is provided; that no
freeman shall be hurt in either his person or property
(*nisi per legale judicium parium suorum vel per le-
gem terrae*) unless by lawful judgment of his peers or
equals, or by the law of the land.   *   *   *   Chap-
ter 29 of *Magna Charta* is in force in this State by
virtue of the act of Nov. 6th, 1829, adopting the com-
mon law and statute laws of England.' "

When the right of trial by jury is secured by consti-
tutional provision in general terms like ours, and with-
out any qualification or restriction, it must be under-
stood as retained in all those cases that were triable by
jury according to the course of the common law. The
provision in the first Constitution, framed in 1838,
"that the right of trial by jury shall forever remain in-
violate," contemplated, without doubt, a continuation
of jury trials in all cases where such was the practice
at the common law, and there is nothing in the subse-
quent Constitutions to indicate a change of meaning
in this respect. It will be remembered that in 1829,
prior to the formation of the Constitution in 1838, the
legislature had expressly adopted the common law of

England as in force in the territory of Florida. But it was never understood that the right of trial by jury secured by such a constitutional provision, extended to all cases, as there were many trials and proceedings according to the course of the common law, in which juries did not participate.

The old common law writ of *quo warranto* was a prerogative writ, to be applied for on behalf of the crown as a matter of right, as against one who had usurped franchises or liberties and for the purpose of enquiring by what right he claimed to do so. It was clearly a civil remedy at law, and the process to bring the party into court was a summons. In process of time the old writ became superseded in great measure by the proceeding by information in the nature of *quo warranto*. This writ, in its origin, was criminal in its nature designed not only to oust the usurper of the franchise claimed by him, but to punish him by fine for such usurpation. The question of the right to exercise the franchise was, however, involved in the prosecution. This writ at first, like the old one, could only be prosecuted on behalf of the crown, and at the present time it must be in the name of the crown, and with us in the name of the State.

The statute of 9 Anne made some changes as to the mode of instituting this writ, confined probably exclusively to municipal offices, and certain crown officers were permitted by that statute, by leave of the court first obtained, to institute the suit in the name of the crown on the relation of parties claiming a right to the office. This statute extended, to some extent, the writ so as to permit under the conditions prescribed a contest in reality between private individuals to the office in question. It was very much debated for quite a while whether the information in the nature of *quo*

*warranto* was strictly a criminal prosecution, or a civil suit. It is clear, however, that for some time before the revolution the writ was regarded in England, though criminal in form, as a civil proceeding to test the right of a party to exercise a franchise, and of ousting a wrongful possessor. It has always been considered as a civil remedy at law by the great majority of the American courts, and our own court has so regarded it. State *ex rel.* vs. Gleason, 12 Fla., 190; State *ex rel.* vs. Saxon, 25 Fla., 342, 5 South. Rep., 801; State *ex rel.* vs. Anderson, *supra;* Ames vs. Kansas, 111 U. S.. 449; Note to case of People vs. Richardson, 4 Cowen, 97.

The question, whether or not the issues purely of fact made upon the pleadings in informations in the nature of *quo warranto* were triable by jury at the common law, has given rise to some diversity of opinion in some of the American courts. In the present investigation we are confined to the proceedings by information in the nature of *quo warranto* which, in its origin, was undoubtedly criminal in nature as well as purpose in part. Our examination into the matter has conducted us to the conclusion that at the time of the revolution the trial of pure questions of fact in such proceedings was by jury. It is stated in 5 Bacon's Abr., page 188, under the head of informations, that "as an information of this kind (*quo warranto*) is now considered rather as a civil proceeding; a new trial may be granted as well where there has been a verdict in favor of the defendant, as where it has been given in favor of the crown." Again on page 187, "where the defendant sets forth a bad title to the office, and confesses the user, that amounts to a confession of the usurpation, and if an immaterial issue is joined, and a verdict found on which the court can not give judg-

ment, yet they will not grant a repleader, but will give judgment on the plea." In the following English decisions in such cases trials by jury on the issues of fact were had, *viz:* Rex vs. Bennett, 1 Strange, 101; Rex vs. Bell, 2 Strange, 995; Nevill vs. Payne, 1 Croke, 304; Rex vs. Francis, 2 Term Rep., 484; Rex vs. Pilips, 1 Burrow, 293; Rex vs. Carpenter, 2 Shower, 47; Rex vs. Malden, 4 Burrow, 2135; Rex vs. Bridge, 1 Wm. Blackstone, 46. In Rex vs. Bennett all the judges of England were equally divided, the division being equal in each court, over the question whether a new trial could be granted after a verdict in favor of the defendant in such proceeding. The view that the suit was criminal then widely prevailed, but this point was finally settled in favor of the view above announced, that the action, though criminal in form, was regarded as a civil suit for the purpose of trying the right to the franchise. It seems also that a bill of exceptions was allowed in such proceedings. Bacon's Abr., *supra.* And in People vs. Sackett, 14 Mich., 243, it was held that the appellate court would not review the proceedings on the trial of issues of fact in such cases by a jury in the Circuit Court without the judge's report of the proceedings, rulings and evidence before him.

Angell & Ames on Corporations, state, sec. 741, "that if a *prima facia* case of usurpation is made out, and there appears a fair doubt on the title of the defendant, the court will not discuss the question in the summary way of motion, but send the facts to a jury." Several English cases are referred to in which the court thought proper to send the question to a jury, or leave the parties to bring the matter more solemnly before the court on demurrer. In a great many of the American courts, and we think a clear majority of

them, parties have a right to have the jury pass upon purely questions of fact in such proceedings. We refer to some of them: People vs. A. & S. R. R. Co., 57 N. Y., 161; People vs. Dolsburg, 16 Mich., 133; Harbaugh vs. Cicott, 33 Mich., 241; State vs. Norton, 46 Wis., 332; State vs. Burrett, 2 Ala., 140; Lee vs. State, 49 Ala., 43; Commonwealth vs, Woelper, 3 Serg. & R., 29; Commonwealth vs. Smith, 45 Penn. St., 59; State vs. Funck, 17 Iowa, 365; State vs. Turnpike Co., 10 Conn., 157.

In People *ex rel.* vs. Cicott, 15 Mich., 326, a question arose in the Supreme Court on issues of fact made there as to the county to which they should be sent for trial by jury, and it was held that in such cases, "the statute being silent as to the place of trial of issues of fact involved therein, the Supreme Court will not send any such case for trial to a court other than that where the election took place, without the same showing as would authorize a change of venue." The Supreme Court of Wisconsin in the case of State vs. Messmore, 14 Wis., 115, ordered a trial by jury in that court on issues of fact raised in such a proceeding on the ground that it was a case of public interest and importance, and should be then determined. That court, as we understand it, exercises its own discretion whether trials by jury shall be had there on issues of fact in such proceedings, or be sent to a trial court for such purpose. In King vs. Amery, 1 Term Rep., 363, it was held that upon an application for a trial at bar, the court will in every case exercise its own discretion upon the peculiar circumstances of the case, and where a fair trial can not be had in the county where the matter arises, the trial will be awarded in the next English county where the king's writ of venue runs. The case of State vs. Foster, 32 Kansas, 14, presents a

complete trial by jury on issues of fact before the Supreme Court in an information in the nature of *quo warranto*. The right of trial by jury on such issues was demanded and accorded by the court, though it is stated to have been done *ex gratia*. *Vide* Paine on Elections, sec. 903, where it is stated, "the weight of authority is in favor of the proposition that, at the common law, an information in the nature of a *quo warranto* was triable by jury." Reynolds vs. State, 61 Ind., 392; Wood on Mandamus and Quo Warranto, page 234; High on Ex. Legal Rems., secs. 740, 741. There are some authorities to the contrary: State vs. Vail, 53 Mo., 97; State vs. Lupton, 64 Mo., 415; State vs. Johnson, 26 Ark., 281. In the first and last of the cases just mentioned applications for jury trials on issues of fact were made in the Supreme Courts and refused. In the last case mentioned the proceeding was by *quo warranto*. In this case it is said that "in the proceeding by information in the nature of *quo warranto* it was expressly provided by an act of parliament (3 Geo. II, Ch., 25), that a jury shall be struck before a proper officer on demand of the king or the respondent," and it is argued from this fact that no such right existed at the common law, as the statute would have been useless if it did. We have not been able to find the statute of Geo. II referred to in the opinion, and can not say whether or not it was declaratory of the common law on the subject, but from the date given, it would be old enough to become law here by virtue of the act of 1829, adopting the common law and English statutes in force prior to and down to 1776.

In State *ex rel.* vs. Commissioners of Suwannee county, 21 Fla., 1, an original proceeding by mandamus in this court, it was held that a jury trial could not be

JUNE TERM, 1894.                    61

Buckman v. The State of Florida ex rel. Spencer.—Opinion of Court.

demanded here.   The view expressed was that the Constitution conferred the jurisdiction on this court in such cases, and the proceeding was at common law, and according to this proceeding there was no jury trial, as the return was conclusive.   Under the statute of 9 Anne issues of fact were permitted to be made on the return and trial had thereon, but as there was no statute requiring or authorizing such issues to be tried by jury in this court, the proceeding should be as it was at common law without a jury.   In State vs. Vail, *supra*, it was decided that the Supreme Court had jurisdiction in such cases, but it would generally decline to investigate them when other courts had been provided for their adjudication, and possessing the same powers as the appellate court over such matters subject to appeal, and having more facilities for the trial of such issues.

The statute of Anne in reference to permitting informations in the nature of *quo warranto* to be filed on the relation of private persons provides that such actions shall proceed in such manner as usual in cases of information in the nature of *quo warranto*.   The proceedings in the case before us were instituted in the Circuit Court and we are to determine whether or not such issues of fact are triable by jury in that court, and not in the appellate court.   As before stated, our conclusion is, that in informations in the nature of *quo warranto* the right to have issues of fact determined by jury existed at the common law, and that such right existed down to the time of the revolution.   There is nothing in the terms of the act of 1872 (Chapter 1874) that will prevent a construction in harmony with such right as it existed at common law, and as such secured by the constitutional provisions to which we have referred.

It may. be well to say that we are not dealing with a statutory regulation as to the contest of the election of a mayor of a town or city. It was decided in State vs. Anderson, *supra*, that the grant of power to the council to judge of the election returns and qualifications of its own members did not deprive the courts of jurisdiction by the remedy of information in the nature of *quo warranto*. Rights asserted by such remedy are controlled by common law principles, and not by statutory regulations providing exclusive modes for settling contests over municipal offices. State vs. Lewis, 51 Conn., 113.

The issues raised on the pleas filed in the case under consideration presented questions purely of fact, and we think the court erred in refusing to submit them to the consideration of the jury. The denial of this right, it will not be questioned, is good ground for a reversal of the judgment appealed from, and an order will be entered reversing the judgment and remanding the cause to the Circuit Court.